**Samuel N. POE, Petitioner,**
v.
**UNITED STATES of America, Respondent.**
**Civ. A. No. 2890-63.**

United States District Court
District of Columbia.
Aug. 17, 1964.

See also D.C., 229 F.Supp. 6.

---

John Bodner, Jr., Washington, D. C., for plaintiff.

David C. Acheson, U. S. Atty., and Oscar Altschuler, Asst. U. S. Atty., for the United States.

J. SKELLY WRIGHT, Circuit Judge*.

This matter came on for hearing on petitioner's motion pursuant to 28 U.S.C. § 2255 to set aside his conviction. The court, having considered the evidence adduced and the arguments of both sides, makes the following findings of fact and conclusions of law.

### Findings of Fact

1. Petitioner, Samuel N. Poe, a 22-year-old indigent with minimal education, was charged by indictment with the commission of six felonies. The indictment charged three counts of housebreaking and three counts of grand larceny. (Tr. 3.) [1]

2. On August 27, 1963, petitioner was tried before judge and jury and was found guilty of three counts of housebreaking, two counts of grand larceny, and one count of petit larceny. (Tr. 190–

---

\* Sitting by designation pursuant to 28 U.S.C. § 291(c).

1. These findings of fact are based upon the original transcript of the trial pro-

ceedings (herein referred to by the symbol "Tr." and the appropriate page of the transcript) and the evidence adduced at the Section 2255 hearing on August 7, 1964.

193.) He was sentenced to serve a term of two to six years imprisonment.

3. Some time prior to the date of trial, the District Court appointed counsel from the Legal Aid Agency to represent petitioner. Before trial, trial counsel, with the assistance of petitioner, prepared a defense to the charges. That defense consisted of testimony to be given by petitioner at trial.

4. Prior to August 27, 1963, petitioner had never experienced a criminal trial before judge and jury. He was not familiar with the practice and procedure of a criminal trial.

5. Petitioner was advised, in general, of his right to take or not to take the stand in his own behalf at his own trial. Petitioner informed counsel that he wanted to take the stand. Trial counsel agreed that petitioner should take the stand and that this was the only available defense.

6. The trial opened at 10:00 A. M. on August 27, 1963. (Tr. 1.) An opening statement was made on behalf of the Government. (Tr. 14–19.) Trial counsel for petitioner reserved the opening statement, but because it later turned out that no defense was presented, no opening statement was made on behalf of petitioner. (See Tr. 19 and 160 *et seq.*)

7. The Government called eight witnesses—three police officers, three victims of the housebreakings and larcenies, and the night porter and the custodian of the building in question.

8. Near the end of the Government's case in chief, the District Court ruled inadmissible certain statements allegedly made by petitioner. (Tr. 152.) The Government then rested. (Tr. 160.)

9. It was about 4:00 P.M. when the Government concluded its case. (Tr. 160–162.) At this point, trial counsel for petitioner was uncertain as to whether the statements previously ruled inadmissible could be used by the Government for purposes of impeachment if petitioner took the stand to testify in his own behalf. Trial counsel sought a ruling on this point from the District Court, but the court refused the request for the ruling, stating that counsel was seeking "an advisory opinion." (Tr. 160–161.)

10. Under the applicable law in effect at that time, petitioner could have taken the stand, denied all the elements of the crimes for which he was charged, and the Government would not have been able to use, for the purpose of impeachment, the statements previously ruled inadmissible.

11. Trial counsel for petitioner felt impelled to make a quick decision on whether to call the petitioner as a defense witness. It was already late in the day. Counsel felt that the court wanted to conclude the trial and submit the case to the jury that afternoon. (See Tr. 150, 162.) Apparently the court was to be closed on the following day because of the Civil Rights March on Washington.

12. Trial counsel for petitioner immediately conferred with petitioner. He strongly urged petitioner not to take the stand on the ground that the inadmissible statements might be used by the Government for purposes of impeachment. Trial counsel did not inform petitioner that he could take the stand and deny the elements of the crimes without giving the Government the right to use for impeachment purposes the statements previously ruled inadmissible.

13. Petitioner, not knowing that he could safely take the stand and testify in his own behalf, was in no position to make an intelligent or meaningful decision on this vital question.

14. On the strong urgings of trial counsel, petitioner reluctantly did not take the stand. Trial counsel rested without calling any witnesses or introducing any evidence. In short, no defense was offered.

15. Counsel for the defendant did not request the standard jury instruction that no adverse inference is to arise from the defendant's not testifying in his own behalf. Such an instruction was not given.

### Conclusions of Law

1. An accused in a criminal trial in federal court has the right to testify in his own behalf. This right is guaranteed and protected by the Fifth and Sixth Amendments to the Constitution, and by federal statute, 18 U.S.C. § 3481. The Fifth Amendment, in pertinent part, provides:

"No person * * * shall be compelled in any criminal case to be a witness against himself, nor be deprived of life, liberty, or property, without due process of law * *."

The Sixth Amendment, in pertinent part, provides:

"In all criminal prosecutions, the accused shall enjoy the right * * to have the Assistance of Counsel for his defence."

2. The right to testify is a basic right, and there is an obligation on the part of both the court and trial counsel to inform the accused of his right to testify, if he so desires. Further, it is the duty of both to assure that the exercise of this basic right by the accused is a free and meaningful decision.

3. The right to testify is personal to the accused. He must make the ultimate decision on whether or not to take the stand. In this regard it is unlike other decisions, which are often called "trial decisions," where it is counsel who decides whether to cross examine a particular witness or introduce a particular document. Here it is the accused who must decide and it is the duty of counsel to present to him the relevant information on which he may make an intelligent decision.

4. Petitioner was denied the free exercise of this right because of the advice of trial counsel and other circumstances of the trial. Being uncertain as to the law, trial counsel urged petitioner not to take the stand because of the danger that illegally obtained statements might be used by the Government to impeach his testimony.

5. The applicable law would have permitted the petitioner to take the stand and deny all of the elements of the crimes charged in the indictment without giving leave to the Government to use the inadmissible statements. In Walder v. United States, 347 U.S. 62, 65, 74 S.Ct. 354, 356, 98 L.Ed. 503 (1954), the Supreme Court said that a defendant "must be free to deny all the elements of the case against him without thereby giving leave to the Government to introduce by way of rebuttal evidence illegally secured by it, and therefore not available for its case in chief."

6. More recently, the Court of Appeals for this Circuit applied the *Walder* doctrine in Tate v. United States, 109 U.S.App.D.C. 13, 283 F.2d 377 (1960). There appellant was convicted of theft of hospital property and sought to gain a new trial on the ground that it was error for the District Court to receive in rebuttal allegedly illegally obtained statements. Appellant had taken the stand at trial and, *in addition* to denying all the elements of the crime, he had said he had gone to the hospital alone and that he had not known one Payne before the time he and Payne were arrested. The Government, in rebuttal, called a police officer who testified that during the allegedly illegal detention of appellant, appellant told police that he and Payne had come to the hospital together. 109 U.S. App.D.C. at 14, 283 F.2d at 378.

7. The Court of Appeals, in affirming the conviction in *Tate*, noted first that this was not a case in which the defendant took the stand and only denied the elements of the crime. *Ibid.*[2]

---

2. See the dissenting opinion in Lockley v. United States, 106 U.S.App.D.C. 163, 167, 270 F.2d 915, 919 (1959), where Judge Burger, author of the *Tate* decision, said:

"From the Walder case I would conclude that before inadmissible evidence can be used for impeachment, three factors must be present: (1) the defendant must elect to take the stand, (2) his testimony which conflicts with the inadmissible statements must do more than merely deny the elements of the crime for which he is

Instead, appellant gave additional testimony, and it was to impeach that additional testimony that the Government used the illegally obtained statements. But even where an accused gives testimony in addition to the denial of the alleged crime, the prosecution is not permitted to use the inadmissible statements in their entirety. As the Court of Appeals explained in *Tate*:

"In the instant case, it is plain. that the court did not admit any statement which was *per se* inculpatory. None of the acts described in the challenged statements, in and of themselves, constituted 'elements of the case against him.' The statements, even if true and believed by the jury, described lawful proper acts in which appellant as well as his companions were free to engage.

"Thus it is not a case where, under the claim of impeachment, a full and detailed confession of a crime was allowed to go to the jury to rebut specific and limited exculpatory statements made by the defendant on direct examination. * * " 109 U.S.App.D.C. at 16, 283 F.2d at 380.[3]

8. The fact that petitioner here did not take the stand in his trial may have been highly prejudicial to his case. The importance the jury attaches to the accused's not taking the stand and denying his guilt cannot be overemphasized. As one noted authority on criminal law has written:

"* * * in 99 per cent * * of all the criminal cases tried in the eighty-six judicial districts at the federal level, defendants who did not take the stand were convicted by juries. I think this is perhaps the result of the organized assault by congressional committees that has

been made on the constitutional privilege against self-incrimination over the past decade. *The fact of the matter is that a defendant who does not take the stand does not in reality enjoy any longer the presumption of innocence.*" Williams, *The Trial of a Criminal Case*, 29 N. Y.S.Bar Bull. 36, 42 (1957).[4] (Emphasis added.)

9. In this case, the necessity for the petitioner's testifying was even greater than usual. All morning and afternoon of the day of the trial the Government called witnesses and presented evidence. When the petitioner's turn came, no defense was offered; not even the petitioner took the stand to deny his guilt. In view of this situation, with all the evidence on one side and none on the other, it was not surprising that the jury concluded the petitioner was guilty.

10. Counsel for petitioner understandably was unprepared for the situation that developed suddenly at the end of the Government's case. He had planned from the beginning to call petitioner as the sole defense witness, but he had not anticipated the problem created by the inadmissible statements. Trial counsel did not know and thus could not inform petitioner of the applicable law. Counsel sought a ruling from the court, but the request was denied. Counsel, believing that the court wanted to conclude the case and submit it to the jury that afternoon, felt impelled to make a quick decision on whether to put the petitioner on the stand. Finally, counsel did not ask the court for a recess of the trial in order to determine the applicable law.

11. As a result of these circumstances, petitioner was not properly and fully informed of the state of the law. Without this essential knowledge no meaning-

---

being tried, and (3) the inadmissible statements should be received only to the extent that they do not admit the very acts which are essential elements of the crime charged. * * * "

3. Note the dissenting opinion in Bailey v. United States, 117 U.S.App.D.C. 241, 245–246, 328 F.2d 542, 546–547 (1964).

4. Quoted in Goldstein, *The State and the Accused: Balance of Advantage in Criminal Procedure*, 69 Yale L.J. 1149, 1186 (1960).

ful decision could be made as to whether or not petitioner should testify. Unquestionably, if petitioner had been informed of the applicable law, he would have testified in his own behalf.

12. The failure to inform petitioner of the applicable law deprived him of a fair trial. Where the defense is substantially weakened because of the unawareness on the part of defense counsel of a rule of law basic to the case, the accused is not given the effective representation guaranteed him by the Constitution. People v. Ibarra, 34 Cal.Rptr. 863, 386 P.2d 487 (1963) (Traynor, J.).

13. In view of the foregoing, the petitioner's conviction must be, and it is hereby, set aside.