STATE of Wisconsin, Plaintiff-Respondent,

v.

Sharon ALBRIGHT, Defendant-Appellant.

Supreme Court

*No. 77–014–CR. Argued September 12, 1979.—Decided May 6, 1980.*
(Also reported in 291 N.W.2d 487.)

124

For the appellant the cause was argued by *Garrett N. Kavanagh,* assistant state public defender, with whom on the brief was *Howard B. Eisenberg,* state public defender.

For the respondent the cause was argued by *David J. Becker,* assistant attorney general, with whom on the brief was *Bronson C. La Follette,* attorney general.

DAY, J.   This is an appeal from an order summarily dismissing Sharon Albright's (hereinafter the defendant) motion, brought pursuant to sec. 974.06, Stats., requesting a new trial or release from custody and discharge.   She had been convicted of one count of contributing to the delinquency of a child[1] and one count of conspiracy to commit burglary.[2]   She alleged in her motion that she was denied her right to testify in her own behalf, as guaranteed by the Constitution of the United States and the State of Wisconsin.   In dismissing the motion, it was the opinion of the trial court that "[t]he files and records of this action conclusively show that the defendant is entitled to no relief for the reason that

[1] Sec. 947.15(1)(a), Stats. 1975.
[2] Secs. 939.31 and 943.10(1)(a), Stats. 1975.

all the matters raised by the defendant in this motion were raised . . . in a post conviction motion heard by this Court on the 24th of June, 1976, and were decided against the defendant. . . . This motion is nothing but a repetition of the matters previously adjudicated on that date." The motion was dismissed pursuant to sec. 974.06 (3), Stats.[3]

At trial, the defendant was represented by appointed counsel. Her post conviction counsel moved for a new trial. The motion was based on two grounds: a lack of evidence to support the conviction and the ineffective assistance of counsel.

At the hearing for a new trial, the defendant testified that she felt that she should have been allowed to testify on her own behalf. She said that she asked her attorney four times regarding the matter but that he told her that he thought she was too unstable to testify and that the prosecution would make her "look bad."

---

[3] Sec. 974.06(3) Stats. 1975, provides:

"974.06. **Post-conviction procedure.** . . . (3) Unless the motion and the files and records of the action conclusively show that the prisoner is entitled to no relief, the court shall:

"(a) Cause a copy of the notice to be served upon the district attorney who shall file a written response within the time prescribed by the court.

"(b) Appoint counsel pursuant to s. 971.06(6) [970.02(6)] if, upon the files, records of the action and the response of the district attorney it appears that counsel is necessary.

"(c) Grant a prompt hearing.

"(d) Determine the issues and make findings of fact and conclusions of law. If the court finds that the judgment was rendered without jurisdiction, or that the sentence imposed was not authorized by law or is otherwise open to collateral attack, or that there has been such a denial or infringement of the constitutional rights of the prisoner as to render the judgment vulnerable to collateral attack, the court shall vacate and set the judgment aside and shall discharge the prisoner or resentence him or grant a new trial or correct the sentence as may appear appropriate. ."

Her trial attorney testified that he discussed with his client whether to put her on the stand prior to the trial. He "indicated to her [that he] . . . didn't feel it was good strategy for her to take the stand." He stated further that the defendant called him a day or two before the trial to ask whether the trial could be postponed because she did not think she could "get through it." He told her then that the trial could not be postponed and that he did not think he wanted her to testify. She asked again at the trial if she could testify, and he told her that he did not think that it was wise to do so because she had a prior conviction which he thought might be admissible and because he felt that the district attorney could "make her look poorly."

On the day of the trial, prior to selection of the jury, the trial judge held a conference in his chambers in the presence of counsel for both sides and the defendant. The district attorney asked if the defendant was going to take the stand for the purpose of determining whether to make a motion to allow the admission of her prior conviction. Her trial counsel stated that he did not expect her to take the stand. The defendant did not say anything at that time, but she did state at her post conviction hearing that when they got back into the court room she again asked her attorney if she could testify. She said she did not say anything to the trial judge because she did not know or understand her attorney's "reasoning."

## I. DOES A CRIMINAL DEFENDANT HAVE A CONSTITUTIONAL RIGHT TO TESTIFY IN HIS OWN BEHALF?

We begin by noting that at common law criminal defendants were not competent to testify under oath in their own behalf at trial. By 1895 the federal govern-

ment and every state, except Georgia, had qualified criminal defendants to give sworn evidence if they wished.[4] *Ferguson v. Georgia,* 365 U.S. 570, 577, 596–598 (1961). *See also,* Comment, *Due Process v. Defense Counsel's Unilateral Waiver Of The Defendant's Right To Testify,* 3 Hastings Const. L.Q. 517, 518–521 (1976). In Wisconsin, the criminal defendant has been deemed competent to testify as a witness since 1869.[5]

[4] In the sixteenth century, the criminal defendant in England was required to conduct his own defense. He was not allowed to call witnesses or to have the assistance of counsel. The trial took the form of an extended argument between the defendant and the counsel for the Crown in which they questioned each other and presented their respective arguments. By the seventeenth century criminal defendants were allowed to call witnesses in their behalf, however, the accused was an interested witness and was incompetent to testify. Disqualification for interest was carried over to this country by our founding fathers. It was not until the nineteenth century that the rule of disqualification for interest came under attack and was gradually eroded by statute. The rules of disqualification for interest of criminal defendants were the last to fall. *Ferguson v. Georgia,* 365 U.S. 570, 573–577 (1961); R. Popper, *History and Development Of The Accused's Right To Testify,* 1962 Wash. U. L.Q. 454; *State v. McKenzie,* 17 Md. App. 563, 576–577, 303 A.2d 406 (1973).

At common law the right of the defendant to be "heard" meant the right to conduct his own trial but did not include the right to testify.

[5] Sec. 325.13, Stats. 1959 (renumbered sec. 885.13 in 1965) provided:

"325.13. **Party may be witness, credibility.** (1) No person shall be disqualified as a witness in any action or proceeding, civil or criminal, by reason of his interest therein; and every person shall, in every such case, be a competent witness, except as otherwise provided in this chapter. But his interest or connection may be shown to affect the credibility of the witness.

"(2) In all criminal actions and proceedings the party charged shall, at his own request, but not otherwise, be a competent witness; but his refusal or omission to testify shall create no presumption against him or any other party thereto."

The question of competency is distinct from the question of whether there is a constitutional right to testify. The Constitution of Wisconsin provides in Art. I, sec. 7:

"In all criminal prosecutions the accused shall enjoy the right to be heard by himself and counsel. . . ."

In construing this section, this court has stated that "assuming" the criminal defendant has a constitutional right to testify, that right is "to testify truthfully in his own behalf." *State ex rel. Simos v. Burke,* 41 Wis.2d 129, 137, 163 N.W.2d 177 (1968). We need not decide whether the Wisconsin Constitution grants a constitutional right to testify, because we conclude that the United States Constitution guarantees that right.

The United States Supreme Court has never explicitly determined whether a criminal defendant has a constitutionally protected right to testify in his own behalf. Although not expressly stated within the body of the United States Constitution, the right to testify is a part of the due process rights of the defendant protected by the Fourteenth Amendment.[6] "Every criminal defendant is privileged to testify in his own defense, or to refuse to do so." *Harris v. New York,* 401 U.S. 222, 225 (1971).

Sec. 885.13, Stats., was repealed and the part relevant to this case was replaced with sec. 906.01, Stats. (effective January 1, 1974 by Supreme Court Order, 59 Wis.2d R. 157), which provides:

"906.01. **General rule of competency.** Every person is competent to be a witness except as provided by ss. 885.16 and 885.17 or as otherwise provided in these rules."

[6] Federal and state courts have not clearly articulated the source of the right to testify. *See, Wright v. Estelle,* 572 F.2d 1071 (5th Cir., 1978) (Godbold, J. dissenting) for an extensive discussion of this issue. *See also, United States ex rel. Wilcox v. Johnson,* 555 F.2d 115 (3d Cir. 1977); *Winters v. Cook,* 489 F.2d 174 (5th Cir. 1974); *U. S. v. Bentvena,* 319 F.2d 916 (2d Cir. 1963); *cert. denied sub nom., Ormento v. U. S.,* 375 U.S. 940 (1963); *Compare, Poe v. United States,* 233 F. Supp. 173 (D. D.C. 1964) aff'd, 352 F.2d 639 (D.C. Cir. 1965).

Further, the Supreme Court has stated that it ". . . has often recognized the constitutional stature of rights that, though not literally expressed in the document, are essential to due process of law in a fair adversary process. It is now accepted, for example, that an accused has a right to . . . testify on his own behalf . . ." *Faretta v. California*, 422 U.S. 806, 819 (1975) (fn. 15). In another context, the Supreme Court has stated that the right to testify is both "an important tactical decision as well as a matter of constitutional right." *Brooks v. Tennessee*, 406 U.S. 605, 612 (1972); *see, Ferguson v. Georgia*, 365 U.S. 570 (1961). Several states have also held that the right to testify is a federal constitutional right. *State v. Rosillo*, 281 N.W.2d 877 (Minn. 1979); *Ingle v. State*, 92 Nev. 104, 546 P.2d 598 (1976) (basis of right not expressed); *Hughes v. State*, 513 P.2d 1115 (Alaska, 1973) (basis of right not expressed); *State v. Noble*, 109 Ariz. 539, 514 P.2d 460 (1973); *People v. Knox*, 58 Ill. App.3d 761, 374 N.E.2d 957 (1978); *People v. Robles*, 2 Cal.3d 205, 85 Cal. Rptr. 166, 466 P.2d 710 (1970); *Townsend v. Superior Court Of Los Angeles County*, 15 Cal.3d 774, 126 Cal. Rptr. 251, 543 P.2d 619 (1975); *contra, Young v. Ricketts*, 242 Ga. 559, 250 S.E.2d 404 (1978).

We conclude that there is a constitutional due process right on the part of the criminal defendant to testify in his own behalf.

## II. *WAS THE DEFENDANT UNCONSTITUTIONALLY DENIED HER RIGHT TO TESTIFY?*

The key issue presented is whether the defendant can be deemed to have waived her right to testify. We recognize that certain constitutional rights of a criminal defendant are so fundamental that they are deemed to be personal rights which must be waived personally by

the defendant. In this category of personal rights is found the decision whether to plead guilty, *Boykin v. Alabama,* 395 U.S. 238 (1969) ; the decision whether to request a trial by jury, *Adams v. U. S. ex rel. McCann,* 317 U.S. 269 (1942) ; the decision to appeal, *Fay v. Noia,* 377 U.S. 391 (1963) ; the decision whether to forego the assistance of counsel, *Faretta v. California,* 422 U.S. 806 (1975) ; and the decision to obtain the assistance of counsel and to refrain from self-incrimination, *Miranda v. Arizona,* 384 U.S. 436 (1966).

We are not convinced that the right to testify falls within this category of "fundamental" rights, which can only be waived in open court on the record by the defendant. To be sure, the right to testify is an important constitutional right. However, we believe that the right to testify, as distinguished from those rights considered to be so fundamental as to be personal to the defendant, does not go to the very heart of the adjudicatory process. Thus, for example, in *Boykin v. Alabama,* 395 U.S. at 242, it was held to be plain error for the trial judge to accept a guilty plea without an affirmative showing that it was intelligent and voluntary. The Supreme Court reasoned that the plea of guilty ". . . is more than a confession. . . ; it is itself a conviction; nothing remains but to give judgment and determine punishment." *Id.* at 242. The plea of guilty, when accepted, operates as a waiver by the defendant of numerous fundamental rights that ensure a fair trial including the privilege against self-incrimination; the right to trial by jury; and the right to confront one's accusers. *Boykin v. Alabama,* 395 U.S. at 243.

Similarly, the decisions whether to waive the right to an appeal, the assistance of counsel, or to be tried by a jury, are so fundamental to the concept of fair and impartial decision making, that their relinquishment must

meet the standard set forth in *Johnson v. Zerbst,* 304 U.S. 458 (1938). That is, the waiver must be "an intentional relinquishment or abandonment of a known right or privilege." *Johnson v. Zerbst,* 304 U.S. at 464.

The duty is on the trial court to ascertain knowing relinquishment.

"The constitutional right of an accused to be represented by counsel invokes, of itself, the protection of a trial court, in which the accused—whose life or liberty is at stake—is without counsel. This protecting duty imposes the serious and weighty responsibility upon the trial judge of determining whether there is an intelligent and competent waiver by the accused. While an accused may waive the right to counsel, whether there is a proper waiver should be clearly determined by the trial court, and it would be fitting and appropriate for that determination to appear upon the record." *Johnson v. Zerbst,* 304 U.S. at 465.

The Supreme Court said that failure of the trial court to make this determination results in loss of jurisdiction by that court to proceed. The trial court in the case at bar was not required to advise the defendant that she had a right to testify. To initiate this inquiry would necessitate a further determination of whether the decision was the defendant's own and that the decision was not made under some misapprehension on her part of the consequences either way.

The defendant's right to testify in a criminal case, by contrast, was long considered to be solely a tactical decision to be left exclusively to the determination of defense counsel. Until recently, it was the established rule that "counsel. . . . [is] free to keep defendants from testifying whenever counsel see fit. Any suggestion to the contrary is chimerical." *United States v. Poe,* 352 F.2d 639, 641, (D.C. Cir. 1965) ; *Sims v. Lane,* 411 F.2d 661 (7th Cir. 1969). We perceive no need for courts in post conviction hearings to delve into the processes by which an

attorney and his client determine whether the defendant should waive his right to testify.[7]

The defendant is free to accept or reject counsel to aid in his defense. *Faretta v. California, supra.* When the defendant accepts counsel to conduct the defense, the decision whether to assert or waive certain constitutional rights of the defendant is delegated to the attorney. *Henry v. Mississippi,* 379 U.S. 443, 451 (1965). This Court has rejected the contention that the defendant has

---

[7] It is interesting how perceptions of what is "just" change. Today some argue that a defendant's right to testify is a "fundamental right" essential to a fair trial for a defendant. It was not always so. In the latter half of the last century when the several states (with the exception of Georgia) were passing legislation making defendants competent to testify (followed by England in 1898) many of those opposed to the change based their arguments on what they felt was in the best interest of the defendant. One of the arguments against making defendants competent to testify was that if jurors knew the defendant could testify and did not, the jury would hold it against such defendant, "if he's innocent why doesn't he get on the stand and say so." When juries know that a defendant is not permitted to testify the negative inference from silence does not arise, or so the old argument ran. The only empirical evidence this writer has found seems to lend credence to the old fears.

" 'In 99 percent . . . of all the criminal cases tried in the eighty-six judicial districts of the federal level [in 1956] defendants who did not take the stand were convicted by juries. . . . The fact of the matter is that a defendant who does not take the stand does not in reality enjoy any longer the presumption of innocence.' " Williams, *The Trial Of A Criminal Case,* 29 N.Y. St. B.J. 36, 42 (1957) *quoted in* Comment, *Due Process v. Defense Counsel's Unilateral Waiver Of The Defendant's Right To Testify,* 3 Hastings Const. L.Q. 517, 534 (1976). Several writers have commented on the detrimental effect to the defendant by not testifying. (*Ibid.,* p. 533).

It is also interesting to note that two of the leaders in the fight to make defendants competent to testify did not favor the Fifth Amendment right against self incrimination. *Ferguson v. Georgia,* 365 U.S. at 579.

a constitutional right to be actively represented in the courtroom by counsel and by himself. *Moore v. State,* 83 Wis.2d 285, 265 N.W.2d 540 (1978).

We conclude that the decision whether to testify should be made by the defendant after consulting with counsel. But we also conclude that counsel, in the absence of the express disapproval of the defendant on the record during the pretrial or trial proceedings, may waive the defendant's right to testify. If counsel waives the defendant's right to testify, and that decision was prejudicial to the defendant, the objection of the defendant should be on the failure to obtain the effective assistance of counsel.[8] The Illinois Supreme Court has focused upon the issue presented here, and the problem of "second-guessing" by the defendant after his conviction.

"The line between vigorous persuasion and coercion is a fine one; the lawyer is obligated not to present testimony that he is satisfied is not true, and he cannot call upon the trial judge to make the decision for him. . . . By hypothesis, in every case in which the issue is raised, the lawyer's advice will in retrospect appear to the defendant to have been bad advice, and he will stand to gain if he can succeed in establishing that he did not testify

---

[8] The defendant should be given the ultimate decision on waiving the right to testify. The ABA Project on Standards for Criminal Justice, *The Prosecution Function And The Defense Function* §5.2, pp. 237–238 (App. Draft 1971) provides:

"5.2. **Control and direction of the case.** (a) Certain decisions relating to the conduct of the case are ultimately for the accused and others are ultimately for defense counsel. The decisions which are to be made by the accused after full consultation with counsel are: (i) what plea to enter; (ii) whether to waive jury trial; (iii) whether to testify in his own behalf."

But whether the third enumerated standard is followed in a given case, raises an issue of effective representation of the defendant by counsel. It is not in and of itself of constitutional dimension. *Cf., Wainwright v. Sykes,* 433 U.S. 72, 93 (1977) (Burger, C.J., concurring).

because his lawyer refused to permit him to do so." *People v. Brown*, 54 Ill.2d 21, 24, 294 N.E.2d 285 (1973).

In that case the court held that in the absence of a contemporaneous assertion by the defendant of his right to testify at the trial, the trial judge properly denied a post conviction hearing on the issue.

There is nothing in the record to suggest that at the time of the trial, the defendant refused to acquiesce in her trial counsel's decision not to put her on the stand. The record at the trial is silent, and the record on the post conviction motion merely shows that although she disagreed with her attorney's decision, she reluctantly accepted his advice. She also had adequate opportunity before the trial to raise her objection. The defendant was in the chambers with counsel and the trial judge when the question as to whether she would testify arose. She chose not to speak when her attorney told the trial judge that he did not expect her to take the stand. She said later that she did not speak because she did not understand her attorney's reasoning. It is apparent that even at that late date, she was relying upon her attorney's advice and accepted that advice.

We do not believe that either this court, or trial courts, are in a position to determine whether the criminal defendant accepted counsel's advice, or was deprived of the right to testify when the trial record is silent on the question.

We decline to recommend that a trial judge, sua sponte advise, a defendant of the right to testify. Such admonition is subject to abuse in interpretation and may provoke substantial judicial participation that could frustrate a thoughtfully considered decision by the defendant and counsel who are designing trial strategy.

The fundamental purpose in requiring that the accused be afforded a lawyer at every critical stage of the prosecution is to ensure that the defendant's constitutional rights are jealously guarded. We in no way mean to hinder the defendant's right to testify. If counsel determines that it is not advisable for the defendant to testify and the defendant acquiesces in that decision, then the right will be deemed waived. If on the other hand the defendant at the time of the trial raises his objection in the record before the trial court, he must be given the option to testify. We will not determine when "advice" stops and the refusal to permit a defendant to testify begins in post conviction proceedings based on a silent record.

*By the Court.*—Order affirmed.

SHIRLEY S. ABRAHAMSON, J. (*dissenting*). As I read the majority opinion, it holds: The criminal defendant has a federal constitutional due process right to testify in her own behalf. The decision whether to testify should be made by the defendant personally after consultation with counsel. Although the right to testify is "important," it is not so "fundamental" that it "can only be waived in open court on the record by the defendant." Defense counsel's failure to call defendant to testify constitutes a waiver of the defendant's right to testify unless the defendant expressly advises the trial court on the record at pretrial proceedings or during the trial of her wish to testify. If counsel waives defendant's right to testify and defendant after trial asserts that she did not consent to the waiver, defendant's recourse is to move to set aside the conviction on the ground of ineffective assistance of counsel, if the waiver was prejudicial to the defendant.

The majority has in effect created a third category of constitutional rights, namely, an "important constitutional right" which lies somewhere between a "fundamental" right, which only the defendant may personally waive, and a less fundamental constitutional right labeled a "trial or tactical decision", which is left exclusively to the determination of defense counsel without any necessity for consultation with or concurrence by the defendant. The majority puts the "right to testify" into this new third category.

I think the majority's creation of a third category of "constitutional rights" labeled "important constitutional rights" just adds to the present confusion caused by the existence of two categories of rights: fundamental and tactical. As the state's brief wisely points out, courts have a difficult time determining whether a particular right is fundamental or tactical because there appears to be no authoritative standard by which to determine into which category a particular right is to be placed. Now the majority adds a third category of rights without establishing any guidelines to determine which "rights" fit into this category and without, as I shall discuss further, making rights in this third category significantly different from those in the tactical rights category.

I can understand why the majority is reluctant to relegate the right to testify to the category of a tactical trial decision completely within counsel's control. "The decision whether to testify is a matter of higher quality and dignity than trial happenings such as whether to object to evidence." *Wright v. Estelle,* 572 F.2d 1071, 1078 (5th Cir. 1978) (Godbold, J. dissenting). A fundamental requisite of due process is the opportunity to be heard. *Wisconsin v. Constantineau,* 400 U.S. 433, 437 (1971). A primary element of the defendant's opportunity to be heard is the right to offer testimony, including the defendant's own story. *In re Oliver,* 333

U.S. 257, 273 (1948) ; *Chambers v. Mississippi,* 410 U.S. 284, 294 (1973) ; Dawson, *Due Process v. Defense Counsel's Unilateral Waiver of Defendant's Right to Testify,* 3 Hastings Const. L.Q. 517, 525–529 (1976). In at least one respect the majority correctly treats the "important constitutional right" to testify like a fundamental right— the decision whether to exercise or waive the right is to be made by the defendant, not counsel.

Mr. Chief Justice Burger, concurring in *Wainwright v. Sykes,* 433 U.S. 72, 93, n. 1 (1977), distinguished those decisions which rest with defense counsel and those which rest with the defendant. He commented "[o]nly such basic decisions as whether to plead guilty, waive a jury or testify in one's own behalf are ultimately for the accused to make." For this statement the Chief Justice cited the American Bar Association Project on Standards for Criminal Justice, *Standards Relating to the Prosecution Function and the Defense Function.* Sec. 5.2 of Standards Relating to the Defense Function, pp. 237–238 (App. Draft 1971), provides as follows:

"5.2 **Control and direction of the case.**

"(a) Certain decisions relating to the conduct of the case are ultimately for the accused and others are ultimately for defense counsel. The decisions which are to be made by the accused after full consultation with counsel are: (i) what plea to enter; (ii) whether to waive jury trial; (iii) whether to testify in his own behalf.

"(b) The decisions on what witnesses to call, whether and how to conduct cross-examination, what jurors to accept or strike, what trial motions should be made, and all other strategic and tactical decisions are the exclusive province of the lawyer after consultation with his client.

"(c) If a disagreement on significant matters of tactics or strategy arises between the lawyer and his client, the lawyer should make a record of the circumstances, his advice and reasons, and the conclusion reached. The record should be made in a manner which protects the confidentiality of the lawyer-client relation."

The commentary to sec. 5.2 makes clear the intent of the draftsmen that the right to testify can be waived only by the defendant personally:

"*a.* Allocation of decision-making power

"The history of the criminal process in our system and the rights vested in an accused under the Constitution mark out certain basic decisions as belonging to the client; other decisions fall within the province of the lawyer.

" . . .

" . . . In making each of these decisions—whether to plead guilty, whether to waive jury trial, and whether to testify—the accused should have the full and careful advice of his lawyer. Although counsel should not demand that his own view of the desirable course be followed, he is free to engage in fair persuasion and to urge his considered professional opinion on his client. Ultimately, however, because of the fundamental nature of these three decisions, crucial in such basic matters governing his own fate, the decisions on these matters belong to the accused." *Id.* at 238–239.

I read this court's decision in *State v. Harper,* 57 Wis.2d 543, 557, n. 8, 205 N.W.2d 1 (1973), as adopting standard 5.2 of the American Bar Association Project on Standards for Criminal Justice, *Standards Relating to the Defense Function* (Approved Draft 1971). This court should not now move away from Standard 5.2.[1]

---

[1] *See Hughes v. State,* 513 P.2d 1115 (Alaska 1973); *People v. Robles,* 85 Cal. Rptr. 166, 466 P.2d 710, 716 (1970).

*See also,* Amsterdam, *Trial Manual for the Defense of Criminal Cases* sec. 390, 1–390 (2d ed. 1971):

"Counsel should weigh these considerations and decide in the first instance whether or not he thinks the defendant ought to testify. That decision should be told to the defendant, with the reasons for it. Counsel may properly urge the defendant that it is unwise or dangerous for him to take the stand. However, if a defendant wishes to testify despite advice to the contrary, it is necessary to yield to his stubbornness . . . . Counsel should always clearly outline to the defendant the hazards of his testifying

The state argues that the decision whether to testify must be left to counsel because rarely is the accused as capable as the attorney of making a knowing and intelligent choice in the matter. I do not think the issue can be determined by looking at whether counsel or defendant is more capable of making the choice. The defendant's liberty is at stake—not counsel's. It seems to me that our concepts of freedom of choice, of fairness to the individual and of respect for the individual mandate that we recognize the defendant's right to make the significant decision whether to testify under oath.

Although the majority opinion recognizes the defendant's right to decide personally whether to testify, the majority opinion then surprisingly concludes that counsel can waive the right, just as counsel can waive constitutional rights which are tactical trial decisions.[2]

(whether or not counsel wants to put him on). But if this fails to daunt the client, and if counsel's advice against testifying fails to persuade him, the client should be allowed to testify."

A concern which apparently is not present in the facts of this case, but which may be present in other cases where defense counsel desires not to have the defendant testify, is that counsel fears that the defendant intends to commit perjury. Various approaches to this problem are discussed in Polster, *The Dilemma of the Perjurious Defendant: Resolution, Not Avoidance*, 28 Case Western Res. L.R. 3 (1977); Dawson, *Due Process v. Defense Counsel's Unilateral Waiver of the Defendant's Right to Testify*, 3 Hastings Const. L.Q. 517, 537–539 (1976); *United States ex rel. Wilcox v. Johnson*, 555 F.2d 115, 121–122 (3d Cir. 1977).

[2] To find waiver of a fundamental right which only the defendant can waive, the court must find an "intentional relinquishment or abandonment of a known right or privilege," and the court must indulge in "every reasonable presumption against waiver of fundamental constitutional rights." *Johnson v. Zerbst*, 304 U.S. 458, 464 (1938).

In *Thiesen v. State*, 86 Wis.2d 562, 565, 273 N.W.2d 314 (1979), this court recognized that:

"certain constitutional rights may be waived only by the defendant himself. Waiver of a constitutional right traditionally

The majority concludes that there is a waiver of this "important constitutional right" if the defendant fails to stand up at trial or pretrial proceedings and make known to the trial court her wish to take the stand. If the defendant fails to object on the record to counsel's failure to call her to the stand, the defendant is bound by counsel's action. I think it is unrealistic to impose such an obligation on the defendant. I would expect that no defendants other than those who are also attorneys or who are very experienced in criminal judicial proceedings would stand up at a trial or at a pretrial proceeding and do battle with defense counsel over the question of whether the defendant should testify.

Because the majority opinion is so quick to find defendant's waiver of this "important constitutional right," it appears that the majority is treating the defendant's "important constitutional right" the same as a tactical trial decision. The majority fails to describe the difference between the trial court's role when defendant stands up to disagree with defense counsel on defendant's testifying and the trial court's role when defendant disagrees with defense counsel on tactical trial decisions. The majority fails to describe what the trial court is to do when the defendant makes known her disagreement with defense counsel as to her testifying; I assume that the

requires intentional relinquishment of a known right. *State v. Harper*, 57 Wis.2d 543, 548, 205 N.W.2d 1 (1972). *See Johnson v. Zerbst*, 304 U.S. 458, 464 (1938); *State v. McDonald*, 50 Wis.2d 534, 184 N.W.2d 886 (1971); *Keller v. State*, 75 Wis.2d 502, 249 N.W.2d 773 (1977). This court has applied the standard of personal and intentional relinquishment of a known right to the defendant's right to counsel and right to a jury trial. *State v. Harper*, 57 Wis.2d at 550; *Keller v. State*, 75 Wis.2d at 509."

The standard of personal and intentional relinquishment of a known right has been recognized by this court to be applicable also to the decision to plead guilty and to not being forced to take the stand in one's own behalf. *State v. Harper*, 57 Wis.2d 543, 550, 205 N.W.2d 1 (1973).

trial court cannot prohibit the defendant from testifying. Nor does the majority opinion tell us what the obligations of defense counsel are in advising a defendant of her constitutional right to testify or not to testify or in advising the trial court in the event of an irreconcilable disagreement between counsel and client.

But the majority does offer the defendant a way out of the "waiver trap," saying: "If the counsel waives the defendant's right to testify, and that decision was prejudicial to the defendant[3] the objection of the defendant should be on the failure to obtain the effective assistance of counsel." This language leaves unclear whether the majority is merely applying the general rule relating to ineffective counsel where tactical trial decisions are concerned or whether the majority is saying that counsel's failure to advise the defendant that she had a constitutional right to decide personally whether or not to testify and that she need not abide by counsel's advice on this decision, in and of itself, constitutes ineffective representation, unless the defendant knew of her right to testify against counsel's advice or under the circumstances should have known of her right to testify.

In the case at bar, after the verdict, newly retained defense counsel moved for a new trial on the ground of ineffective trial counsel, specifying that trial counsel did not allow the defendant to testify. In this motion for a

[3] Thus the harmless error rule apparently applies to situations in which defense counsel improperly prevents a defendant from exercising his right to testify. The facts of this case indicate that the defendant's testimony would have been very important to the jury's determination of guilt. Thus it is clear in the instant case that preventing her from testifying would not be harmless error.

The Minnesota Supreme Court held that "the right to testify is such a basic and personal right that its infraction should not be treated as harmless error." *State v. Rosillo*, 281 N.W.2d 877, 879 (Minn. 1979). *See also Wright v. Estelle*, 572 F.2d 1071, 1080 (5th Cir. 1978) (Godbold, J., dissenting).

new trial the defendant claimed that counsel had made a strategic error in not having her testify. Counsel did not raise the issue of defendants' unknowingly and unintentionally waiving her constitutional right to testify. The trial court held a hearing on the issue, and the defendant and trial counsel testified at this hearing. The trial court concluded that the attorney's decision not to have the defendant testify was sound trial strategy and that the charge of ineffective counsel was not proved. The trial court said:

". . . The chief thrust of defendant's motion [for a new trial] is to incompetence of counsel because the client did not testify. It is apparent to the Court that the client had recently been convicted of the crime of adultery in another Court in this county. This conviction could have been presented to the jury to impeach her testimony had she testified. It was necessary for trial counsel to weigh this fact. In fact, the testimony shows he did this. The testimony further shows that these young persons were hanging around her place for one reason or other, a number of them, and to get this adultery before the jury, any trial counsel would shiver in his boots to have that brought before the jury with these young men testifying. As the Supreme Court said in the Simmons case [57 Wis.2d 285], we believe, however, that an attack on professional competence of another attorney should [not] be undertaken lightly, and should not be predicated upon post-conviction. Counsel's preference for what he might have done in the same situation; and again at page 299. There has been a failure to show that the trial conduct was the result of incompetence and not sound trial strategy. Certainly, I don't believe any counsel of any competence whatsoever would have placed this woman on the stand under the circumstances of this case in view of the testimony which he knew very well was to be brought out on the trial. . . . Counsel tried this case, the Court is very familiar with the case, and believes that the case was properly presented when he was faced with the facts he had. . . . [R. 123–124]."

In resolving the motion for a new trial the trial court was properly concerned with the question of trial strategy which had been raised; the trial court was not concerned with the constitutional right to testify, an issue which had not been raised. Under the established rules applicable to challenging convictions on the ground of ineffective counsel where tactical trial decisions are concerned, the challenge is decided not on the ground that counsel failed to advise the client of a particular constitutional right or on the ground that counsel did not heed the client's wishes on such tactical trial decisions, but rather on the ground that under all the circumstances, the representation was not "equal to that which the ordinarily prudent lawyer, skilled and versed in criminal law, would give to clients who had privately retained his services." *State v. Harper*, 57 Wis.2d 543, 557, 205 N.W.2d 1 (1973).

The defendant's post-conviction motion under sec. 974.06 raises issues that were not raised in her previous motion for a new trial based on ineffective assistance of counsel. The defendant asserts in her 974.06 motion papers that she told her trial attorney that she wanted to testify, that her attorney told her not to testify, that she was not informed that she had a constitutional right to testify or that the final decision whether to testify was hers; and that she would have testified if she had known that she had that right. In her 974.06 motion the defendant is contending that she did not voluntarily and knowingly accede to counsel's advice and that trial counsel in fact prevented her from testifying.

The trial court mistakenly concluded that "the files and records of this action [the 974.06 motion] conclusively show that the defendant is entitled to no relief for the reason that all the matters raised by the defendant in this motion were raised . . . [by her prior motion for a new trial] and were decided against the defendant

. . . ." By affirming the trial court's order summarily dismissing the 974.06 motion based on a constitutional right to testify, the majority is in effect applying the same rules applicable to challenging convictions on the grounds of ineffective counsel where tactical trial decisions are concerned to defendant's waiver of the right to testify. Thus the majority is treating the right to testify, which it characterizes as an "important constitutional right," in the same way as it would treat a tactical trial decision.

I suggested previously that the majority opinion might be interpreted as saying that counsel's preventing the defendant from exercising her "important constitutional right" to testify is conduct which in and of itself constitutes ineffective assistance of counsel. I conclude that apparently the majority did not intend this interpretation, because the majority affirms the trial court's summary dismissal of defendant's 974.06 motion instead of granting defendant's request that this court remand the cause to the trial court to take testimony on the factual issue raised.

I believe defendant's motion alleges facts which, if true, would entitle her to relief and that therefore the trial court should hold an evidentiary hearing. The majority opinion, without giving the defendant an opportunity to be heard on the issue, concludes that "although she disagreed with her attorney's decision, she reluctantly accepted his advice." I would remand for an evidentiary hearing to determine whether the defendant intentionally relinquished or abandoned a known right. I therefore dissent.