STATE of Wisconsin, Plaintiff-Respondent,

v.

Antonio Orlando WILKENS, Defendant-Appellant.†

Court of Appeals

*No. 90–0689–CR. Submitted on briefs September 4, 1990.—Decided December 4, 1990.*

(Also reported in 465 N.W.2d 206.)

†Petition to review denied.

619

620

For the defendant-appellant the cause was submitted on the briefs of *Dvorak & Fincke, S.C.* by *Waring R. Fincke,* of Milwaukee.

For the plaintiff-respondent the cause was submitted on the briefs of *Donald J. Hanaway,* attorney general, by *Thomas J. Balistreri,* assistant attorney general, of Madison.

Before Moser, P.J., Sullivan and Fine, JJ.

MOSER, P.J.   Antonio Orlando Wilkens (Wilkens) appeals from a judgment affirming a jury verdict finding him guilty of second-degree sexual assault in violation of sec. 940.225(2)(a), Stats., party to the crime of robbery, use of force, in violation of secs. 943.32(1)(a) and 939.05, Stats., false imprisonment under sec. 940.30, Stats., and from a denial of his postconviction motion.

Wilkens argues that because the preliminary hearing was closed to the public by the trial court without his personal consent and without articulating its reason for closure, he was denied his right to a public trial. He further claims that the trial court erred in holding that the arrest was legal. Wilkens finally argues that if he loses on the first two issues because of waiver, then the trial court erred in determining that his trial counsel was effective.

In the early morning hours of May 12, 1988, Wilkens dragged E.E. into a garage in an alley behind a home located on West Atkinson Avenue, in the city of Milwaukee. There he raped E.E., falsely imprisoned her and assisted Kenneth Gilbert (Gilbert) in stealing her leather jacket and money. Additional facts will be stated in the opinion as needed.

At the preliminary hearing a closure[1] request was made and the following colloquy occurred between the preliminary hearing judge and counsel:

> MS. RENSCHEN: Your Honor, at this time I would be making a request on behalf of the victim in this case. As you can read from the criminal complaint, she went through a very brutal assault and she has been traumatized by that, is very affected by that, and would appreciate not having to go through the details of describing the assault in front of unnecessary strangers. She was in the courtroom earlier watching some of the preliminary hearings and there were groups of students in the courtroom that she felt nervous about having to testify in front of a large group. At this time because of the emotional stress that that would be causing her, I would be asking you to close the courtroom pursuant to statute.
>
> THE COURT: Any objections?
> MR. COHEN: No objection.
> MR. CHRISTON: No.
> MR. COHEN: Let the record reflect Mr. Gilbert is in person before the Court.

■■■■■■

When a defendant accepts counsel in the defense of his case, the decision to assert or waive certain constitu-

---

[1]Section 970.03(4), Stats., reads as follows:

> If the defendant is accused of a crime under s. 940.225, 948.02, 948.05 or 948.06, the judge shall, at the request of the complaining witness, exclude from the hearing all persons not officers of the court, members of the witness's or defendant's families or others deemed by the court to be supportive of them, or otherwise required to attend. The judge may exclude all such persons from the hearing in any case where the defendant is accused of a crime under s. 940.225, 948.02, 948.05 or 948.06 or a crime against chastity, morality or decency.

tional rights is delegated to that attorney.[2] The option of whether to have a public or closed preliminary hearing is one of those instances where the defense counsel has the right to make the decision, especially where the defendant, as here, does not claim he opposed the closure, but on appeal argues that he did not personally consent to it.[3] The failure to follow such a procedural rule constitutes a waiver of a constitutional right,[4] in this case a preliminary hearing open to the public. A waiver of a constitutional right is defined as an intentional relinquishment of a known right.[5] Because there was no objection to the closure of the preliminary hearing, the matter was waived.

We also note, however, that because Wilkens made no objection to the closure of the hearing, the court was not obligated to balance his interest in a public hearing, which was waived, against the interests of the victim in being protected from the embarrassment and emotional trauma involved in relating the details of a sexual assault in public.[6]

Wilkens next argues that the trial court erred in holding that his arrest was legal. Wilkens' defense counsel had filed pretrial motions objecting to his stop and

[2]*State v. Albright,* 96 Wis. 2d 122, 132, 291 N.W.2d 487, 492, *cert. denied,* 449 U.S. 957 (1980).

[3]*State v. Dean,* 67 Wis. 2d 513, 530–31, 227 N.W.2d 712, 720 (1975), *cert. denied,* 423 U.S. 1074 (1976).

[4]*Thiesen v. State,* 86 Wis. 2d 562, 564–65, 273 N.W.2d 314, 316 (1979).

[5]*Johnson v. Zerbst,* 304 U.S. 458, 464 (1938); *Thiesen,* 86 Wis. 2d at 565, 273 N.W.2d at 316.

[6]*See, e.g., Press-Enterprise Co. v. Superior Court,* 478 U.S. 1, 7 (1986); *State ex rel. Stevens v. Circuit Court,* 141 Wis. 2d 239, 253–54, 414 N.W.2d 832, 838 (1987) (here the defendant made a proper objection).

arrest. At the suppression hearing, the trial court also held a hearing on these motions, and upheld the stop's legality under both sec. 968.24, Stats., and *Terry v. Ohio.*[7]

The trial court then asked the counsel for both defendants about the motion addressing the legality of the arrest. Wilkens' trial counsel said that only the stop was in question. Later, when asked again about the arrest, Wilkens' codefendant's counsel advised the court that there would be no need for a hearing on the arrest. Wilkens' trial counsel did not respond to the question. Therefore, there was no need for the trial court to rule on the legality of the arrest. Wilkens raised this issue in his postconviction motion and the trial court (a different trial judge) denied it, holding that the victim's identification of Wilkens was the necessary probable cause for his arrest.

On appeal, Wilkens claims that the one hour to one hour and twenty minutes between his being stopped and formally being placed under arrest turned the stop into an arrest for which there was no probable cause. The State argues that at the pretrial suppression hearing, when Wilkens' trial counsel advised the suppression hearing judge that he was contesting only the stop and not the arrest, the issue was waived.

Wilkens' attorney's deliberate decision not to pursue a previously filed motion to suppress due to an illegal arrest is a waiver binding on Wilkens.[8] Because we are primarily an error-correcting court, we cannot exercise a broad inherent discretionary power to review an error

[7]392 U.S. 1 (1968).

[8]*See* sec. 971.31(2), Stats; *State v. Copening,* 103 Wis. 2d 564, 570, 309 N.W.2d 850, 853 (Ct. App. 1981).

deemed waived by statute.[9] The supreme court can.[10]

Lastly, Wilkens claims that if the above issue was waived by trial counsel, he was then ineffective for failure to object to the closure of the preliminary hearing and in not pursuing his motion concerning the constitutionality of the arrest.

■

There is a two-part test for ineffective counsel. The defendant must first show that the trial counsel was ineffective and secondly, he must show that such deficiency prejudiced his defense,[11] and that absent this error the result would have been different.[12]

We have noted above that in Wisconsin a defense counsel has the authority, without the defendant's approval, to accept or reject closure of a preliminary hearing.[13] Because counsel was not deficient or ineffective in acceding to closure of the preliminary hearing, we need not move on to the second part of the test for ineffectiveness.

■

As to trial counsel's abandonment of the illegal arrest motion, we hold that under the circumstances, this did not amount to ineffective counsel. For the stop of a person to pass constitutional muster as investigatory, the detention must be temporary and last no longer than is necessary to effect the purpose of the stop.[14]

---

[9]*State v. Schumacher,* 144 Wis. 2d 388, 407–09, 424 N.W.2d 672, 679–80 (1988).

[10]*Id.* at 410, 424 N.W.2d at 680.

[11]*Strickland v. Washington,* 466 U.S. 668, 687 (1984); *State v. Pitsch,* 124 Wis. 2d 628, 633, 369 N.W.2d 711, 714 (1985).

[12]*Strickland* at 694; *Pitsch,* 124 Wis. 2d at 642, 369 N.W.2d at 718.

[13]*See Albright,* 96 Wis. 2d at 132, 291 N.W.2d at 492.

[14]*Florida v. Royer,* 460 U.S. 491, 500 (1983).

625

"Similarly, the investigative methods employed should be the least intrusive means reasonably available to verify or dispel the officer's suspicion in a short period of time."[15] A hard and fast time limit rule has been rejected.[16] In assessing a detention for purposes of determining whether it was too long in duration, a court must consider "whether the police diligently pursued a means of investigation that was likely to confirm or dispel their suspicions quickly, during which time it is necessary to detain" the suspect.[17] In making this assessment, courts "should not indulge in unrealistic second-guessing."[18] In assessing a detention's validity, courts must consider the " 'totality of the circumstances—the whole picture,' "[19] because the concept of reasonable suspicion is not " 'readily, or even usefully, reduced to a neat set of legal rules.' "[20] The manner in which a temporary detention of a suspect is created must be gauged by a standard of reasonableness.[21]

In this case, a number of police squads responded to a dispatch that a woman was dragged into a garage screaming. When the police arrived at the address given, they met a man who told them that the persons involved with the woman were in an automobile passing in front of that address. The police who arrived first on the scene immediately told other arriving officers to stop the passing vehicle. Those police officers followed the vehicle

---

[15]*Id.*

[16]*United States v. Place,* 462 U.S. 696, 709 (1983).

[17] *United States v. Sharpe,* 470 U.S. 675, 686 (1985).

[18]*Id.*

[19]*United States v. Sokolow,* 490 U.S. 1, 8 (1989) (quoting *United States v. Cortez,* 449 U.S. 411, 417 (1981)).

[20]*Id.* at 7 (quoting *Illinois v. Gates,* 462 U.S. 213, 232 (1983)).

[21]*State v. Washington,* 120 Wis. 2d 654, 662, 358 N.W.2d 304, 308 (Ct. App. 1984).

and stopped it after a few blocks of travel. They ordered the three occupants out, handcuffed them and placed them in separate police vehicles.

While this was occurring, the officers first on the scene obtained a verbal statement from Reginald Parr (Parr), whose telephone call to the police was the catalyst for the investigation. Parr stated that he was in his bed at the rear of his home when he heard a woman screaming. When Parr looked out his rear bedroom window he saw a woman struggling with a man. He saw the woman being pulled into a garage in the alley behind his home. The alley was lighted. Parr also said he saw a light grey car. As he watched it, an occupant came out of the automobile and went into the garage that the first man had pulled the woman into. He saw the same man reappear and get into the car which left the scene. Parr said he then called the police. He saw the car return to the scene, the man in the garage got into it, and then it was driven to the end of the alley. At that time, Parr went to the front door of his home and met the police. He advised them that the occupants of the automobile passing in front of the home at that time were involved with the woman in the garage.

After obtaining this information, one of the police officers went in search of the woman. He found E.E. approximately two blocks away from the scene. At that time she was wandering, crying hysterically and was wearing only a pair of jeans. The officer returned her to the scene and he and his partner, after calming her down, interrogated her. She said that she had been robbed by two men and one of them had raped her. After the men left she could not find all of her clothes and she left the garage to seek help.

After receiving E.E.'s statement, the officers asked her to identify the garage, which she did. The officers

627

then called the police department to have a detective come to the scene because of the rape. While in the garage, she identified her clothing which had been strewn throughout the garage. E.E. was then taken to the scene of the stopped vehicle where she identified Wilkens as the rapist and Gilbert as the man who, along with Wilkens, took her coat and money. They were then arrested.

Under the circumstances of this case, Wilkens' detention for an hour to an hour and twenty minutes did not ripen into an illegal arrest. The police were diligent in their crime investigation by getting Parr's statement, finding the victim, E.E., calming her down, getting her statement of the events and establishing her identity of the garage and her clothes within the garage. They then immediately sent her to the scene of the arrest for possible identification. E.E.'s identification was immediate, and Wilkens and Gilbert were then arrested. This arrest was reasonable under the totality of the circumstances in this case. Thus, counsel was not ineffective in not attacking the arrest. Again, we need not address the second part of the test.

*By the Court.*—Judgment and order affirmed.

FINE, J. *(concurring).* Although I concur in the majority opinion, I write separately to express my dismay at the apparent win-at-all-costs attitude displayed by both Wilkens' trial and appellate counsel.

In explaining why he believed, in retrospect, that he should have objected to the exclusion of the general public from the preliminary examination, Wilkens' trial counsel testified as follows:

> A  I suppose that because hearings sometimes are held in open court and people are there to

observe victims. Sometimes these witnesses who are victims would be, sometimes they have a tendency maybe to just—they might sometimes tighten up and they get a little more frightened and they may not tend to be as easy with their testimony, whether it is to the benefit of the defense or to the prosecution is something we have to be aware of.

Q    So, your statement in saying that you think it might have helped is based not on this specific case but just in general that you think it might be tougher for a victim to have to testify in front of a big group of people than in front of a smaller group of people?

A    That's right.

Wilkens' appellate counsel has embraced this theme on appeal, arguing that trial counsel's "actions deprived the defendant of his right to a public preliminary examination with its attendant pressure on the victim-witness . . .."

   I recognize that one of the consequences of a public trial is the impression upon each witness of the solemnity of his or her oath to testify truthfully. *See Waller v. Georgia,* 467 U.S. 39, 46 (1984). In this regard, the public trial operates in a way similar to the face-to-face component of the right to confrontation—namely, it "enhances the accuracy of factfinding by reducing the risk that a witness will wrongfully implicate an innocent person." *Maryland v. Craig,* 110 S. Ct. 3157, 3164 (1990). Nevertheless, just as the face-to-face component of confrontation will, at times, be subordinate to other significant issues of public policy, *id.,* 110 S. Ct. at 3164–3166, so too will a criminal defendant's right to a public proceeding, *Waller,* 467 U.S. at 45; *see also Press-Enterprise Co. v. Superior Court,* 478 U.S. 1, 9 n.2 (1986); *Globe News-*

*paper Co. v. Superior Court,* 457 U.S. 596, 607–610 (1982).

The criminal justice system must protect victims of crime from "undue emotional pressure or harassment" or "undue embarrassment and emotional trauma," and a defendant's right to a public proceeding may, accordingly, have to give way. *State ex rel. Stevens v. Circuit Court,* 141 Wis. 2d 239, 254, 414 N.W.2d 832, 838 (1987); *accord Globe Newspaper Co.,* 457 U.S. at 607–610 (sexual assault victims under the age of eighteen).[1] It is this public interest that section 970.03(4), Stats., was designed to address.[2] Although section 970.03(4) is subject to a criminal defendant's right to a public preliminary examination, the Wisconsin Supreme Court in *Stevens* has recognized, and has rightfully accommodated, the special fragility of some victims by permitting the public's exclusion from preliminary examinations in sexual assault cases when that is necessary to protect the victim.

As I have pointed out elsewhere:

---

[1] The special needs of victims wracked by the terror of their ordeals are appropriately considered in other contexts as well. Thus, the United States Supreme Court has held that sparing a victim the trauma of having to testify at a new trial is a legitimate factor to be considered in deciding whether to reverse a conviction because of an alleged marginal violation of a defendant's rights. *Morris v. Slappy,* 461 U.S. 1, 14–15 (1983).

[2] Section 970.03(4), Stats., provides:

If the defendant is accused of a crime under s. 940.225, 948.02, 948.05 or 948.06, the judge shall, at the request of the complaining witness, exclude from the hearing all persons not officers of the court, members of the witness's or defendant's families or others deemed by the court to be supportive of them, or otherwise required to attend. The judge may exclude all such persons from the hearing in any case where the defendant is accused of a crime under s. 940.225, 948.02, 948.05 or 948.06 or a crime against chastity, morality or decency.

Crime takes a terrible toll on its victims. A 1985 survey of crime victims in Kentucky, for example, reported the typical devastation left in crime's wake:

> Results made from the victimization study suggest that in the short term (within a year of the incident) victims of crime were significantly more depressed and more fearful than non-victims, victims of violent crime reported the highest level of depression and fear, and victims of multiple incidents of crime during one year reported higher levels of depression and fear than did those who reported only one crime incident or no crime. In the long term, the level of fear in victims continued to be higher than the level of fear in non-victims and the long-term effects of violence on fear of crime are more pronounced than are the long-term effects of experiencing property crime.

*State v. Jones,* 151 Wis. 2d 488, 497, 444 N.W.2d 760, 764 (Ct. App. 1989) (Fine, J., concurring) (quoting from 7 Criminal Justice Statistic Ass'n, Inc., *The CJSA Forum* 2 (May, 1989)). The criminal justice system must not exacerbate victims' trauma. It also must not permit its processes to subvert the system's ultimate goal of truth and justice. In my view, it is highly improper to use the right to a public proceeding as a bludgeon with which to bully a fragile victim into either a fear-based refusal to testify or testimonial incoherence and inconsistency; not every tactic may be pursued in the quest for victory. "A criminal trial is not a 'game.' " *Morris,* 461 U.S. at 15.