MENTEK, Plaintiff in error, v. STATE, Defendant in error.

*No. State 236 (1974). Argued February 4, 1976.—*
*Decided March 2, 1976.*
(Also reported in 238 N. W. 2d 752.)

For the plaintiff in error there were briefs by *Howard B. Eisenberg*, state public defender and *Ronald L. Brandt*, assistant state public defender, and oral argument by *Mr. Brandt*.

For the defendant in error the cause was argued by *William L. Gansner*, assistant attorney general, with whom on the brief was *Bronson C. La Follette*, attorney general.

ROBERT W. HANSEN, J.  The defendant was convicted of rape, sexual perversion and false imprisonment. He challenges such conviction on a half-dozen grounds. All six issues raised will be reviewed in turn.

*Photographic identification.*

On the same day as the criminal incident, the victim of the assault and the victim of the rape were shown five pictures. Prior to viewing the pictures the victims were told only that the automobile found at the scene was registered to defendant and that defendant's wallet was

found in such automobile. Both victims stated that they did not know anyone by defendant's name. Of the five pictures shown, four were in black and white and one was in color. Two of the five pictures were of defendant, one in black and white and one in color, the one in black and white taken three years earlier than the one in color. Both victims were shown the pictures separately. The young lady could not identify any of the photographs but stated that she could identify her assailants if she saw them in person.

Defendant's claim is that the photographic identification procedure followed was impermissibly suggestive. It was not. The procedure followed parallels that used in the recent case of *Holmes v. State.*[1] There the witness was shown five or six photographs in sequence. Two were color photos of the defendant and the rest were black and white photos of other persons. As to the two photos of the defendant on colored film, our court, in *Holmes,* held: "Nor is the fact that defendant's picture was colored, as opposed to black and white, significant."[2] Ordinarily witnesses are shown head shots from a police "mug shot" file, black and white photos of persons charged with or convicted of crime. But there is no reason why the police may not add photos or snapshots, colored or not, of persons not pictured in the police records. Suggestiveness can accompany a photographic identification.[3] When it does, it arises from the circumstances surrounding the photo identification, particularly statements made by the police to the witness concerning the pictures. It does not arise from the type of camera or kind of film used in taking the pictures. That the victim of the assault identified only the color photo of the defendant, not the black and white photo taken

---

[1] (1973), 59 Wis. 2d 488, 208 N. W. 2d 815.
[2] *Id.* at page 497.
[3] *Id.* at pages 493, 494.

three years earlier, goes to the weight to be given his identification, not to its admissibility.

As to the in-court identification of the defendant by the victim of the rape, she was not able to identify any of the five photos shown her as being that of the defendant at the first exhibiting of them to her. After the photo identification process was over, her companion subsequently told her which photo he had picked, but this does not show impermissibly suggestive procedure by the police. Immediately prior to the preliminary hearing there was a one-to-one confrontation of the victim of the rape and the defendant. She immediately and positively identified the defendant as her assailant. Subsequently she identified the color photo of the defendant as being a photograph of her assailant. There is nothing at all suggestive about this sequence of events. As to both the in-court identifications of this defendant by both the victim of the assault and the victim of the rape we would on this record find that there was an independent source for such identifications,[4] but there is no need for such holding where we hold, as we do, that there was here nothing impermissibly suggestive in the procedures followed.

*Instruction given.*

The complaint and information in this case charged defendant with having committed "together with Michael Micalizzi" the crime of false imprisonment and rape. Defendant was charged with having acted alone in committing the crime of sexual perversion. Neither information nor complaint referred to sec. 939.05, Stats., the party-to-a-crime statute.[5] The trial court instructed the

---

[4] *Id.* at page 496.

[5] There is no absolute requirement that such charge appear in the information. *See: Nicholas v. State* (1971), 49 Wis. 2d 683, 693, 183 N. W. 2d 11, this court holding: "We conclude that failure

jury that, if it found the defendant to have acted in concert with Micalizzi as to false imprisonment and rape, then the jury must find the defendant guilty of those crimes.[6] As to the charge of false imprisonment, no challenge is or could be raised as to the applicability of the instruction. The alleged prejudice is that the instruction allowed the jury, if it felt the evidence was weak as to the identification of defendant as the actual perpetrator of the act of rape, to convict him as an aider or abettor of Micalizzi. Since there was no act of intercourse or penetration claimed or suggested between Micalizzi and the victim, it is difficult to see any basis for the claim that defendant's aiding or abetting Micalizzi is in the picture, or a jury could believe it was. However, the rationale of inclusion of the instruction goes to the nature of the crime of rape. It is clearly the fact that, in a forcible rape, one person can have the intercourse while another can supply the element of force. In the case before us, the record amply supports the conclusion that the defendant was the one who had the intercourse and that Micalizzi supplied the element of force or additional force. This is a situation where no one person alone provides all required elements of a crime. Thus, under the party-to-a-crime statute,[7] where one person consciously aids another person in the execution of a crime, he is liable for the substantive crime committed by another.[8]

to charge the defendant under the party-to-a-crime section, in the absence of other circumstances showing a detrimental effect on the defendant, would be harmless error."

[6] *See:* Wis J I—Criminal, Part I, 400.

[7] *See:* Sec. 939.05 (2) (b) and (c), Stats.

[8] *State v. Nutley* (1964), 24 Wis. 2d 527, 554, 555, 129 N. W. 2d 155, this court stating: "Under the terms of sec. 939.05 (2) (b) and (c), Stats., a person may be vicariously liable for a substantive crime directly executed by another. Under the complicity theory of sec. 939.05 (2) (b), a person is liable for the substantive crime committed by another if (1) he undertakes conduct (either

In the case before us, the criminal objective was rape, and both defendant and Micalizzi proceeded toward it. Neither of the two assailants could present a defense that he was not guilty because his companion used the force required. Where Micalizzi admitted using force, and was not claimed by anyone to have been the one who had the intercourse, the instruction given was appropriate, with the jury thereby required to find, as it did, that the defendant had intercourse with the victim. Defendant's claim that this jury may have convicted him of rape on a theory that he aided or abetted Micalizzi in the accomplice's commission of the actual physical assault is a contention based on speculation not supported by this record or furthered by the instruction given.

*Instruction denied.*

As to the charge of sexual perversion, the defendant sought an instruction adding certain requirements to elements of the crime of sexual perversion, as defined in sec. 944.17 (1), Stats. Instead the trial court gave the standard instruction,[9] and was correct in doing so. The claimed authority for added elements to the crime of sexual perversion is the case of *Jones v. State.*[10] There this court described the act of the convicted defendant as ". . . public, accomplished, not with a consenting spouse but forced upon a victim of the same sex who was unable to escape from the defendant's physical violence and de-

verbal or overt action) which as a matter of objective fact aids another person in the execution of a crime, and further if (2) he consciously desires or 'intends' that his conduct yield such assistance."

[9] "Sec. 944.17 of the Wisconsin Statutes provides: Sec. 944.17 **Sexual perversion.** Whoever does either of the following may be . . . (punished); (1) Commits an abnormal act of sexual gratification involving the sex organ of one person and the mouth or anus of another."

[10] (1972), 55 Wis. 2d 742, 200 N. W. 2d 587.

mands."[11] Except for the difference in sexes, that would describe the conduct charged and proved against this defendant.[12] However, to set the record straight, we find it clear that *Jones* did no more than reject the contention that sec. 944.17 (1) applies to ". . . married persons [engaging in] consensual sexual intimacies conducted in private. . . ."[13] This is not to be read disjunctively to mean that the statute cannot be applied to the acts of married persons *or* consensual acts *or* private acts. No new elements of required proof were added to the crime. The statement quoted is to be read conjunctively, meaning only that where all three factors are present, the statute does not apply. The defendant's proposed instruction requiring nonmarital status, force and commission of the act in public, each and all, to be proven is an incorrect statement of the law and was properly rejected by the trial court.

*Questions concerning perjury.*

On appeal this defendant claims he was prejudiced by an inquiry made of Micalizzi by the prosecutor concerning the crime of perjury.[14] The factual setting at trial was as follows: Micalizzi testified that on the evening in question he was in the company of the defendant and that

---

[11] *Id.* at page 748.

[12] *Id.* at page 748, this court stating: "It can hardly be said the defendant here has any real or concrete interest in the vindication of the rights of privacy of married couples and he should not be allowed to use a reference to such rights to escape a conviction for his criminal acts."

[13] *Id.* at page 748, this court there defining defendant's contention to be that ". . . the statute [Sec. 944.17 (1), Stats.] could be used to prosecute married persons for consensual sexual intimacies conducted in private and that such prosecution would be an invasion of constitutionally protected rights or marital privacy."

[14] *See:* Sec. 946.31, Stats.

they had visited several bars. When he got to the encounter with the victims at the lakefront, he did not identify the defendant as his companion on the beach. The court then adjourned for lunch. After the recess, Micalizzi identified the defendant as having been with him during the episode on the beach, as well as earlier. After defendant was thus identified by Micalizzi, the prosecutor asked Micalizzi what the crime of perjury was. The defense attorney stated on the record: "I am going—that's okay, let him answer." Micalizzi was then asked if he was truthful when he earlier told of an unidentified person being with him at the lakefront. This was objected to, the objection being overruled and the court stating that the witness could correct any previous testimony if he wanted to. As to the question asked concerning perjury, defense counsel specifically declined to object. Subsequently, defense counsel, concerning questions asked by the prosecutor, stated: "I did not choose to object to any of these questions, Judge, for the reason that I did not want to give this jury the impression that I am trying to protect this individual [Micalizzi]." It is clear that there was here a deliberate decision as to trial tactics which resulted in a waiver of objection to the question concerning perjury.[15]

*Medical examination.*

Seven months after he was sentenced to prison, the defendant filed a motion seeking an order authorizing an examination of defendant by a competent physician

---

[15] *See: Gedicks v. State* (1974), 62 Wis. 2d 74, 84, 214 N. W. 2d 569, this court holding: "When objection is not made to the initial introduction or, at least, when the objectionable nature of the testimony is apparent, the right to subsequently object to the introduction of such testimony has been lost. The right to object on appeal to what was not objected to initially, at time of trial, is waived."

to determine whether defendant is sterile. Accompanying the motion was a letter from the doctor who had testified at trial that he found sperm on the swab that he took from the vagina of the victim, his examination being conducted between 3 a.m. and 4 a.m. following the raping of the victim. In his letter the doctor stated that, if the defendant was sterile, ". . . then the sperm that I found could not have been his. . . ." The trial court denied the motion for the examination as to sterility finding that, even if the defendant were found to be sterile, "rape can still be committed regardless of the emission or non-emission of sperm. . . ." The trial court additionally held that "what new evidence might be educed from such an examination would not be reasonably probable to expect a different result to be reached on a new trial." We agree with the trial judge. Even if the results of the belatedly requested examination were to show sterility at the time of the examination, we agree that this would not here warrant holding that a new trial could produce a different result. There is no claim here that sterility at the time of an examination, seven months later, would establish sterility at the time of the crime. The doctor's testimony as to finding sperm in the vagina of the victim was here cumulative, but not crucial to the identifying of the defendant as the man who had, with his accomplice, forced the victim to go to the scene of the crime and had had an act of intercourse with the victim overcoming her will by force.

*Interest of justice.*

Finally, as has become par for the course, the defendant repeats the arguments earlier made and contends that, taken together, they warrant granting this defendant a new trial in the interest of justice. We have found each of these arguments to be without substance. Adding them together adds nothing. Zero plus zero equals zero.

With respect to the rape and sexual perversion charges, the defendant does in seeking reversal in the interest of justice add the argument that at the lakefront scene the victim of the rape was allowed to go to the bathroom in the park and that she returned to the place where the two assailants held her boyfriend instead of fleeing the scene. This, it is claimed, shows that she was not then "confined or restrained." It would hardly describe her situation later on at the power plant where she was taken, blindfolded, by the two men who identified themselves as having guns and being willing to use them. The contention that this victim did not resist the rape or sexual perversions is not available to assailants who state that they are armed and will shoot their victim if their orders are not complied with. As this court has stated it: "The law does not require a woman to become a martyr to test by resistance the sincerity of a threat to rape at gunpoint."[16]

*By the Court.*—Judgment and order affirmed.

[16] *State v. Herfel* (1971), 49 Wis. 2d 513, 519, 182 N. W. 2d 232.