STATE of Wisconsin, Plaintiff-Respondent,

v.

Edward E. SIMPSON, Defendant-Appellant.†

Court of Appeals

*No. 93–1282–CR. Submitted on briefs April 13, 1994.—Decided June 7, 1994.*

(Also reported in 519 N.W.2d 662.)

†Petition to review filed.

776

For the defendant-appellant the cause was submitted on the briefs of *Edward John Hunt Law Office*, by *Edward John Hunt* of Milwaukee.

For the plaintiff-respondent the cause was submitted on the briefs of *James E. Doyle*, attorney general by *David J. Becker*, assistant attorney general of Madison.

Before Wedemeyer, P.J., Fine and Schudson, JJ.

WEDEMEYER, P.J.   Edward E. Simpson appeals from a judgment of conviction adjudging him guilty of attempted robbery, aggravated battery and theft. Simpson also appeals from an order denying his request for postconviction relief. Simpson presents two issues for our review: (1) whether he was denied his constitutional right to testify at trial; and (2) whether trial counsel rendered ineffective assistance. Because Simpson waived his right to testify and, because his trial counsel did not provide ineffective assistance as that term is explained in *Strickland v. Washington*, 466 U.S. 668 (1984), we affirm.

## I.  BACKGROUND

The essential facts in this case are not in dispute. On January 3, 1991, two individuals accosted Leonard and June Dolney as they were getting out of their motor vehicle. One of the individuals then punched Leonard in the face, knocked him to the ground and stole the wallet from his trousers. The second individual demanded that June give him her purse. She complied by throwing the purse to the ground. Both individuals then fled from the scene.

Shortly thereafter, police officers stopped a motor vehicle for traffic violations. Andre McFerrin was driv-

777

ing and Edward Simpson was the passenger. After arresting McFerrin for operating a vehicle after revocation of his driving license, the officers searched the vehicle and found a woman's purse. The purse contained a prescription bottle bearing the name of Leonard Dolney.

McFerrin and Simpson were subsequently arrested for the crimes against the Dolneys. The men were tried separately, as each had implicated the other as the instigator of the incident. Simpson was eventually found guilty of attempted robbery, aggravated assault and theft. He was sentenced to a total of twenty-two years incarceration. Simpson then brought a postconviction motion arguing that he had been denied his right to testify and had received ineffective assistance from his trial counsel. The trial court denied Simpson's motion in a written order dated April 13, 1993. Simpson now appeals. Further facts necessary to a resolution of the case are set forth below.

## II. DISCUSSION

### A. *Right to Testify*

Simpson first argues that he was prohibited from presenting an appropriate and complete defense because he was denied his constitutional right to testify on his own behalf.

This court recently noted that a defendant's right to testify is fundamental in nature. *State v. Wilson*, 179 Wis. 2d 660, 670, 508 N.W.2d 44, 48 (Ct. App. 1993). We also recognized, however, that a defendant may waive the right to testify. *Id.* at 671-72, 508 N.W.2d at 48. The standard is whether the record demonstrates that the defendant knowingly and voluntarily waived

the right. We conclude that the record supports the trial court's finding that Simpson did indeed knowingly and voluntarily waive his right to testify.

As an initial note, we recognize the merits of a trial court engaging in an on-the-record colloquy with the defendant regarding his right to testify. As we noted in *Wilson*:

> "[I]t would be advisable for the trial court, immediately prior to the close of the defense's case, to make a record inquiry as to whether the defendant understands he has a right to testify and that it is his personal decision, after consultation with counsel, not to take the stand."

*Id.* at 672 n.3, 508 N.W.2d at 48 n.3 (quoting *Torres-Arboledo v. State*, 524 So. 2d 403, 411 n.2 (Fla. 1988)). Nonetheless, as we explained in *Wilson*, the principles of waiver set forth in *State v. Albright*, 96 Wis. 2d 122, 291 N.W.2d 487 (1980), remain precedential law and, therefore, we are not in a position to mandate a new requirement concerning waiver of one's right to testify. *Wilson*, 179 Wis. 2d at 672 n.3, 508 N.W.2d 48 n.3. Thus, in line with *Albright*, we consider the totality of the record in deciding whether Simpson appropriately waived his right to testify.

At the postconviction hearing, Simpson's trial counsel testified as follows:

> Q  Now, did you have any conversation with the defendant regarding whether or not he wished to testify at his trial?
>
> A  Yes.
>
> Q  What was the nature of that conversation?

A   I told him that I thought he should testify given our defense, and he indicated to me that he did not want to take the stand.

Q   Did he tell you why not?

A   My notes don't reflect it, but I think the reason may have been his prior conviction.

Q   And did you confer with him during the trial as to whether or not he wished to testify based on your discussions with him and your encouragement to do so?

A   At one point I did, because my note says this conversation occurred on March 25 of 1992, and I think that was one of the days of the trial. It may have been. I'm pretty sure it was one of the days we tried the case.

Q   And did he ever indicate to you a desire to testify at any time throughout the trial?

A   No, no. Not at all. He said he didn't want to.

Simpson testified to the contrary, i.e., he wanted to testify but his trial counsel advised him against the idea. The trial court found that the defense attorney's version of events was more believable than Simpson. We cannot say that these findings are clearly erroneous and, therefore, accept them as true. *See* § 805.17(2), STATS. Having accepted the version of events as delineated by defense counsel, we conclude that they adequately show that Simpson waived his right to testify in a knowing and voluntary fashion. Defense counsel testified that he and Simpson discussed the right to testify. Defense counsel further indicated that he had actually encouraged Simpson to testify and that Simpson had decided against the idea.

*B.   Ineffective Assistance of Counsel*

780

A criminal defendant's right to counsel is guaranteed by the Sixth Amendment to the United States Constitution and by art. I, sec. 7 of the Wisconsin Constitution. The right to counsel exists to protect a defendant's fundamental right to a fair trial and includes the right to effective assistance of counsel. *McMann v. Richardson*, 397 U.S. 759, 771 n.14 (1970); *State v. Ludwig*, 124 Wis. 2d 600, 606, 369 N.W.2d 722, 725 (1985). In considering an ineffective assistance claim, counsel is "strongly presumed" to have rendered adequate assistance. *Strickland v. Washington*, 466 U.S. 668, 690 (1984).

The test is two-pronged: "First, the defendant must show that counsel's performance was deficient. . . . Second, the defendant must show that the deficient performance prejudiced the defense." *Id.* at 687. Both prongs of the test present mixed questions of fact and law. *State v. Pitsch*, 124 Wis. 2d 628, 633-34, 369 N.W.2d 711, 714 (1985). The trial court's findings of fact will stand unless clearly erroneous. Section 805.17(2), STATS. Once the facts are established, however, whether counsel's performance was deficient and prejudicial are both questions of law. *State v. Marty*, 137 Wis. 2d 352, 356-57, 404 N.W.2d 120, 122 (Ct. App. 1987).

Simpson first claims that his trial counsel was deficient because he did not move to strike for cause two individuals from the jury panel — Mr. Schultz and Mr. Phifer. During *voir dire*, Mr. Schultz stated that he frequently worked within the office of the district attorney due to his employment as a broadcast engineer. The following exchange then occurred:

MR. MOLITOR (Assistant District Attorney): Would your contact in that regard cause you to be less than fair and impartial?

MR. SCHULTZ: I'd have to say a little bit, sure.

MR. MOLITOR: I guess — in what respect, we'll have to ask?

MR. SCHULTZ: I guess I get to see a lot of the worse of things. I mean, because I do work with the media so much. There's a lot more bad than good.

MR. MOLITOR: But you're willing to follow the Court's instructions in this case, however, and the fact that the defendant is presumed to be innocent, and unless the State overcomes that presumption by evidence which convinces you of his guilt beyond a reasonable doubt, that presumption attends to him throughout the course of the trial?

MR. SCHULTZ: Yeah.

Responding to a question as to whether the old age of a victim would cause any of the jurors to be less than impartial, Mr. Phifer stated:

MR. PHIFER: I'm not sure on that because I would have to say I've got mixed feelings if someone is in their twenties or thirties that's attacked versus somebody who's elderly. You said 79?

MR. MOLITOR: Yes.

MR. PHIFER: I'm not that sure exactly what my personal reaction would be to that.

MR. MOLITOR: And a lot of these things, the judge is going to instruct you on using your common sense. You can't leave everything you learned outside the courtroom door and come in here a blank sheet. I guess what we're asking you, though, is if you have some personal feelings or reactions, are you able to set those feelings aside and judge the case only on the facts in this case and, in effect, corral your emotions?

MR. PHIFER: I have no problem putting my feelings aside, but the way you asked that, I wasn't you know — I mean, you asked if somebody would have a problem. If I saw an incident between two 30-year-olds, it wouldn't bother me the way it would between a 20-year-old and an 89-year-old individual. As far as putting it aside, I'd have no problem dealing with right and wrong and putting those feelings aside.

Simpson's trial counsel made no attempts to follow up on these colloquies. Simpson argues that this inaction, in light of our decision in *State v. Traylor*, 170 Wis. 2d 393, 489 N.W.2d 626 (Ct. App. 1992), renders his trial counsel's performance deficient.

In *Traylor*, we stated:

Counsel was ineffective for failing to move to strike for cause. We make the same decision regarding the other jurors. In each case, there was a failure to conclusively determine whether the juror would follow the law as instructed by the trial court instead of following his or her own concept of justice. Counsel should have asked the appropriate follow-up questions to assess whether the juror would follow the instructions of the court and, if counsel failed to receive a satisfactory answer, should have moved to reject the juror for cause.

*Id.* at 399-400, 489 N.W.2d at 628.

Here, there was a determination as to whether Mr. Schultz and Mr. Phifer would follow the law as presented by the trial court. The assistant district attorney secured assurances from both jurors that they would be able to put their experiences or feelings aside and fairly decide the case. Simpson's trial counsel testified at the postconviction hearing that these

assurances were adequate and that the jurors "were [not] going to be less than fair and impartial." Simpson's protestations notwithstanding, we are not persuaded that the events during *voir dire* prove that trial counsel rendered deficient performance.

Simpson next argues that his trial counsel was ineffective because he failed to bring a motion to suppress the evidence of June Dolney's purse due to the fact that it was found as a result of a pretextual stop.

At the postconviction motion hearing, the trial court held a hearing on the merits of the suppression issue. The trial court ruled that the stop of the vehicle was supported by probable cause to believe that the driver was committing two traffic violations — driving with lights on bright and no light over license plate. There is no dispute that under Wisconsin law, those violations justified the stop of the vehicle and the arrest of its driver. *See* § 345.22, STATS. (authority to arrest without a warrant for a traffic violation), § 347.12, STATS. (use of multi-beam headlamps), and § 347.13, STATS. (tail lamps and registration plate lamps). Thus, we agree with the trial court that the stop was lawful. Consequently, even if defense counsel had moved to suppress, the motion would have been denied, so there can be no prejudice. Because of this conclusion, Simpson's claim of ineffective assistance of counsel must fail. *See State v. Cleveland*, 118 Wis. 2d 615, 618 n.1, 348 N.W.2d 512, 515 n.1 (1984).

Simpson's third alleged defect in his trial counsel's performance is that he failed to object to the admission of Leonard Dolney's fecal-stained pants.

At trial, Leonard testified that he had defecated in his pants due to the excitement of being robbed and

784

beaten. Defense counsel stood silent during the admission of this testimony. By not objecting to the admission of this evidence, trial counsel for Simpson was deficient in his performance. Clearly this was evidence that counsel should have objected to on grounds of relevance. However, Simpson presents no argument as to why the admission of the evidence was prejudicial. In fact, our review of the record reveals that the introduction of the pants in no way tended to prove that Simpson was responsible for the crime. Further, there is no inference that any sympathy garnered by the introduction of this evidence made it reasonably probable that the result in this case would have been different if the evidence had been excluded. We conclude that Simpson has failed to meet his burden of proof showing that his trial counsel's deficient performance was prejudicial.

Simpson's fourth complaint concerning his trial counsel's performance is that counsel failed to adequately investigate an alibi defense.

At the postconviction motion hearing, trial counsel acknowledged that Simpson had informed him of an alibi defense. This defense was that Simpson was with his sister, Linda, at her residence on the night of the incident up to just after 10 p.m. Counsel testified that he had sent Linda a letter concerning the incident and Simpson's allegation that she might serve as an alibi. Counsel also indicated that he attempted to call Linda. Neither attempt was successful in contacting Linda. Consequently, counsel explained that because the potential alibi was not really complete and because he was going to pursue a different defense for Simpson, he chose not to pursue Linda any further. We conclude that the measures undertaken by trial counsel do not

fall below the prevailing professional norms as far as investigation of possible defenses. Therefore, we find no deficiency on this point.

Finally, Simpson alleges that his trial counsel rendered ineffective assistance in failing to cross examine on the issues of an absence of fingerprints on the purse and the reference to "suspects" in the police report.

At trial, police officer Frederick Birts testified that Simpson's fingerprints were not found on the purse. He also testified that he had accidentally made a mistake in preparing his police report in that he wrote "suspects" instead of "suspect." This raised a question as to whether there might have been three individuals at the scene where Simpson was arrested. On appeal, Simpson essentially presents no analysis as to why each of these alleged errors constitutes ineffective assistance of counsel. Simpson does, however, assert that these deficiencies, along with the alleged deficiencies explained above, constitute a valid claim for ineffective assistance of counsel. Alas, as the supreme court has recognized in *Mentek v. State*, 71 Wis. 2d 799, 809, 238 N.W.2d 752, 758 (1976): "zero plus zero equals zero."

*By the Court.*—Judgment and order affirmed.

FINE, J. *(concurring)*. I join fully in the majority opinion on all issues, but, in light of the Dissent, write separately to note the basis for my agreement with part II.A. *(Right to Testify)* of the majority opinion.

The Dissent fails to recognize the continuing vitality of the "principles of waiver" established by *State v. Albright*, 96 Wis. 2d 122, 291 N.W.2d 487 (1980). *See State v. Wilson*, 179 Wis. 2d 660, 672 n.3, 508 N.W.2d 44, 48 n.3 (Ct. App. 1993) (declining to adopt rule

786

"requiring the trial court to undertake an on-the-record colloquy with the defendant at the close of the defense's case-in-chief concerning his or her right to testify"). In *Albright* the "trial record [was] silent." 96 Wis. 2d at 134, 291 N.W.2d at 492. Nevertheless, the supreme court, in the face of ambiguous evidence adduced at a post-conviction motion, could not conclude that the defendant was deprived of her right to testify. *Id.*, 96 Wis. 2d at 134-135, 291 N.W.2d at 492-493. Here, by contrast, the post-conviction record is *not* ambiguous: the facts as found by the trial court establish a clear waiver.

SCHUDSON, J. (*concurring in part; dissenting in part*). Although I agree with the majority's conclusions regarding Simpson's claims of ineffective assistance of counsel, I disagree with the majority's analysis of his right to testify.

This case presents a narrow question: can the *postconviction motion record alone* establish that a defendant waived the right to testify, or must the *trial record* establish that the defendant waived the right to testify prior to the completion of the trial? The majority ignores this important distinction, asks only "whether the record demonstrates that the defendant knowingly and voluntarily waived the right," majority op. at 778-779, and mistakenly implies that this case is controlled by our recent decision in *State v. Wilson*, 179 Wis. 2d 660, 508 N.W.2d 44 (Ct. App. 1993).

In *Wilson*, we concluded that the *trial record* established the defendant's waiver of his right to testify. We based that conclusion largely on the trial court's on-the-record summary of an off-the-record side-bar conference concerning whether the defendant would

testify. 179 Wis. 2d 672-675, 508 N.W.2d at 48-49. In *Wilson*, it is not clear whether the trial court made that record just before or sometime after the point at which the defendant would have testified. What is clear, however, is that the trial court made that record *during the trial*.

In *Wilson*, we also relied on information developed at the postconviction motion in concluding "that the matter of Wilson's testifying at trial was fully explained to him by [trial counsel] and that Wilson knew he had the final say in deciding whether to testify or not." *Id.* at 674, 508 N.W.2d at 49. Would that post-conviction record, standing alone, have supported waiver absent the trial record that seemed essential to our conclusion? *Wilson* does not say. To answer that question in this case, we must refer to the critical precedent on which *Wilson* is based.

In *Wilson*, we relied on the rationale of *Krueger v. State*, 84 Wis. 2d 272, 267 N.W.2d 602, *cert. denied*, 439 U.S. 874 (1978). We explained:

> In *Krueger*, the Wisconsin Supreme Court considered whether, *based upon the trial and supplemental records*, the defendant validly waived his right to a jury trial when defense counsel entered an oral waiver and the defendant remained silent. The court concluded that the defendant had indeed waived his right to a jury trial but held "that henceforth *a record demonstrating the defendant's willingness and intent to give up the right to be tried by a jury must be established before the waiver is accepted.*"

*Wilson*, 179 Wis. 2d at 671, 508 N.W.2d at 48 (quoting *Krueger*; citation omitted; emphasis added). In *Wilson*, the record of waiver derived primarily from the trial and secondarily from the postconviction motion. Here,

by contrast, there is absolutely no record of waiver from the trial. This violates the *Krueger* principle that "a record demonstrating [waiver] be established before the waiver is accepted." Based on *Wilson*, I conclude that this principle applies with equal force to waiver of the right to testify. Further, based on the clear implications of *Krueger* and *Wilson*, I conclude that both constitutional principles and prudent trial practices preclude any exception that would allow a postconviction motion record to suffice in the complete absence of a trial record of waiver.

The reason is clear. If a trial court fails to clarify a defendant's waiver on the record at the appropriate time, the defendant's opportunity to preserve the right is lost. Thus, for the jury waiver examined in *Krueger*, the record of the defendant's waiver had to have been "established," of course, "before the waiver [was] accepted"—before jury selection otherwise would have taken place. Then, if a defendant does not validly waive the right to a jury trial, a jury still can be selected. Likewise, for the right to testify examined in *Wilson* and in this case, a defendant's waiver properly would be established immediately prior to the time the defendant otherwise would testify or, at the very least, certainly must be established before the parties finally rest their cases. Then, if the defendant does not waive this right, the defendant still can testify.

The conclusion I offer would not necessarily make a postconviction motion irrelevant to the determination of the waiver issue. A postconviction hearing, however, would only be needed to develop further evidence in the event of a challenge to the knowing or voluntary nature of the previous, on-the-record waiver.

Under *Krueger* and *Wilson*, trial courts must not allow the waiver of the right to testify to be left to

silence, chance, or assumptions subject to dispute at postconviction motions. Moreover, this court should not slide by the real issue of this appeal. In doing so, the majority jeopardizes defendants' trial rights, countenances casual trial court practices, and assures countless, unnecessary postconviction motions and appeals. Accordingly, on this significant issue, I respectfully dissent.