**COURT OF APPEALS
DECISION
DATED AND FILED**

**July 16, 2019**

Sheila T. Reiff
Clerk of Court of Appeals

**NOTICE**

This opinion is subject to further editing. If published, the official version will appear in the bound volume of the Official Reports.

A party may file with the Supreme Court a petition to review an adverse decision by the Court of Appeals. *See* WIS. STAT. § 808.10 and RULE 809.62.

**Appeal No. 2018AP1144-CR**

**STATE OF WISCONSIN**

Cir. Ct. No. 2013CF1753

**IN COURT OF APPEALS
DISTRICT I**

STATE OF WISCONSIN,

PLAINTIFF-RESPONDENT,

V.

KEVIN B. HUTCHINS,

DEFENDANT-APPELLANT.

APPEAL from a judgment and an order of the circuit court for Milwaukee County: DAVID L. BOROWSKI and CAROLINA STARK, Judges. *Affirmed*.

Before Brash, P.J., Kessler and Dugan, JJ.

¶1 KESSLER, J. Kevin B. Hutchins appeals a judgment of conviction, following a jury trial, of two counts of second-degree sexual assault, one count of false imprisonment, and one count of battery, all as incidents of domestic abuse.

Hutchins also appeals the order denying his postconviction motion for relief. Hutchins contends that the trial court erred in admitting prejudicial other acts evidence and that defense counsel was ineffective for failing to move for a mistrial when the State referenced the other acts in its opening statement. We disagree and affirm.

## BACKGROUND

¶2 On April 12, 2013, Hutchins was charged with one count of second-degree sexual assault and one count of misdemeanor battery, both as acts of domestic abuse. According to the criminal complaint, on April 2, 2013, Hutchins went to the home of his girlfriend, M.U., who is the mother of his three children. Hutchins was intoxicated and upset because a few days prior to the incident M.U. indicated that she wanted to end their relationship. Hutchins began interrogating M.U. about the status of their relationship and their children. Hutchins became increasingly agitated, ultimately punching M.U. on the side of her head. The complaint further states that Hutchins went to the kitchen and retrieved a butcher knife and threatened to kill himself. Hutchins then asked M.U. if they could have sex "one last time." When M.U. refused and attempted to leave the residence, Hutchins blocked her and ultimately forced intercourse. Hutchins then went to sleep. M.U. went to work the following morning and then reported the incident to West Allis Police. An amended information later charged Hutchins with two counts of second-degree sexual assault, one count of false imprisonment, and one count of misdemeanor battery, all as acts of domestic abuse.

¶3 The matter proceeded to trial. During opening statements, the State told the jury that on April 3, 2013, M.U. told West Allis Police that Hutchins

appeared at her home intoxicated and upset that she wanted to end their eighteen-year relationship.  The State continued:

> Now [M.U.] told police that a couple of days before, on March 31st, she had told the defendant that their 18-year relationship was over.  She was worried about his use of alcohol and she also wanted to see someone else.
>
> So when he came over … visibly intoxicated, she was very concerned.
>
> The defendant started out by asking her about their relationship, what was going to happen to the children, what was going to happen with their relationship.  He was voicing concerns about how this all would end.
>
> But the defendant also became very agitated, and at some point during this original discussion, he takes her phone away from her.  He starts to go through the phone.
>
> He accuses her of infidelity, of seeing another man and he becomes very jealous.
>
> But [M.U.] knows the defendant very, very well and because, as I said and she will testify, they have been in a relationship for 18 years, so she just doesn't respond.
>
> This makes the defendant even more angry and he punches her once in the side of the head and she reports to the police the next day that when he punched her, she experienced a great deal of pain.
>
> Unfortunately, this isn't the first time she has experienced something like this, so she makes certain decisions.

Defense counsel objected, but the trial court overruled the objection.  The State then described Hutchins's suicide threat, the violent encounter that ensued, and M.U.'s reaction, stating:

> She makes certain decisions based upon her relationship and how well she knows the defendant.  She tries to predict his reactions and then respond accordingly.
>
> ….

3

And [M.U.] makes, like I said, certain decisions to manage the situation to keep him quieter, to calm him down.

….

Now [M.U.] is vigilant and she stays awake for just a couple of hours until she has to go to work.

And it may not make any sense to you now, but she goes to work because she needs her job. If she doesn't have a job, she has no way to support their children and no income.

She explains to the police why she went to work and that she goes to work. She also explains, as soon as work was over, she went straight to the police.

¶4     M.U. also testified, telling the jury about the night Hutchins attacked her. She stated that after she refused to have sex with Hutchins, he "balled up his fist [and] punch[ed] me in my temple." M.U. further stated: "I got a little shaken up…. It was just, for us, that was kind of normal, but it was more forceful this time, more powerful. I think the anger had kind of set in a temper which he has always had, but it [was] just to a whole different level." (Some formatting altered.) The State followed up with M.U.:

[State] Now you said that that was -- I don't mean to twist your words so correct me if I am wrong, but you said it was fairly typical?

[M.U.] Uh-huh.

[Defense Counsel] I would object, Your Honor, there has been no prior motion to bring in any other acts evidence.

[The Court] Sustained without some foundation.

[State] You had mentioned that and I wanted -- my ultimate question was actually, if this time you were afraid or you were just used to that.

What was your emotional reaction to that particular punch by the defendant on that night?

4

> [M.U.] That it was more rough than a normal, something I was used to from him[.]
>
> [Defense Counsel] I would object again.

The trial court overruled the objection, but told the State to "move on." Later, but still during direct examination, the following exchange occurred:

> [State] Now when I hear you describing a lot of what happened, you're at work saying, I knew it was something I had to do, during this whole time are you still kind of protecting the defendant or something else? Explain that to me.
>
> [M.U.] No, my feelings weren't that for him at all. I just -- I can't really describe it, I guess I just throughout the day, as I looked at myself in the mirror and I thought of all the last 17 years that night, everything kind of boiled up all throughout the day and in order for it to be completely over I just knew I had to tell somebody.
>
> ….
>
> [State] It also sounds, from what you have been describing, that this is behavior that you have come to sort of put up with, can you describe that for me?
>
> [M.U.] It has been –
>
> [Defense Counsel] I would object, Your Honor, she is trying to put in other acts evidence again.

¶5 Outside of the presence of the jury, defense counsel told the trial court that the State was attempting to introduce other acts evidence without having filed a pretrial motion. The State explained:

> I am asking her very specific questions not to have her testify, and she hasn't, in fact, testified to any other acts by the defendant, but rather, her emotional reaction and state of mind based on the history of the relationship.

I think a quick **Sullivan**[1] analysis is helpful, it is certainly relevant in the context of domestic violence.

It is somewhat prejudicial, but I am being very careful with the phrasing of my questions to avoid any specific other acts, injuries or actions, conduct by this particular defendant to come in, so I am aware of that.

….

[The Court] … Are there any other acts that I don't know about?

Is he charged with a [domestic violence] case, was he charged with a battery?

Was he arrested as relation to something related to this victim, to the witness, anything like that, that is obvious?

I mean a case, or a charge, or a referral to the D.A.'s Office or the police were called?

[The State] I am not certain about police contacts and I have not recently checked on referrals in the past.

[Defense Counsel] I am not aware of any, Your Honor….

….

[Defense Counsel] She shouldn't be allowed to do this. She keeps leading the witness down the same path.

[The Court] She is not leading the witness, she asked questions.

….

[The Court] When she says, did this, that or something else happen, that is not leading, that is giving a witness who is emotional, who has been in tears on the stand multiple times, some questions and some options and when she said is it A, B or something else, the witness can answer A, B or something else or something completely different.

---

[1] *See* **State v. Sullivan**, 216 Wis. 2d 768, 576 N.W.2d 30 (1998).

> You know, I was a little concerned about the questions and answers about him not supporting the kids and him allegedly being what appear to be as a general louse in terms of his paychecks, and drinking, and booze and whatnot in the context of alleged domestic violence relationship allegedly sexual assault, alleged battery, and alleged penis-to-vagina intercourse with force or the threat of force, it provides some context, as the State alluded to earlier today, that would explain or give way, she didn't immediately go to the cops, why she immediately didn't call 911 and why she did go to work.
>
> It is entirely plausible that anyone, victim of abuse, especially a female in this case being abused alleged by, in this case, by the defendant, would not want to disrupt or scare children, would want to go to work.
>
> Sometimes someone is in shock, sometimes there is all kinds of reasons they might otherwise carry on about their business, not run to the police, or not run to a neighbor or not run to the sexual assault treatment center.
>
> So, from that context, it might have been a bit close to the line, but I think it was relevant, it was appropriate, it was not unfairly prejudicial.
>
> I do not want the State to lead and I do not want other acts evidence going in. I don't think it has yet, so I am overruling the objection for now.
>
> The defense will get their chance on cross examination.

(Bolding and italics added.)

¶6    The jury ultimately found Hutchins guilty as charged. As relevant to this appeal, Hutchins filed a postconviction motion for a new trial arguing that the trial court erred in admitting other acts evidence, namely, M.U.'s testimony about her violent history with Hutchins. Hutchins argued that the other acts evidence was not admitted for a permissible purpose and was unfairly prejudicial. Hutchins also argued that defense counsel was ineffective for failing to move for a mistrial after the trial court overruled counsel's objection to the State's opening statement. Specifically, he argued that counsel's "deficient performance prejudiced Hutchins

by 1) ensuring that he would not be granted a mistrial; 2) giving him no outlet to challenge the court's error in allowing the State's impermissible statements."

¶7 The postconviction court denied Hutchins's motion without a hearing.[2] The court found that M.U.'s testimony did not constitute other acts evidence. However, the court stated that even if the testimony was other acts evidence, it was admissible because it provided context about M.U.'s mental state and why she reacted to Hutchins's behavior in a particular manner. The postconviction court also found that defense counsel was not ineffective for failing to move for a mistrial because the trial court would have denied the motion.

¶8 This appeal follows.

## DISCUSSION

¶9 On appeal Hutchins reiterates the arguments made in his postconviction motion. Whether a postconviction motion alleges sufficient facts to entitle the defendant to a hearing for the relief requested is subject to a mixed standard of review. *State v. Allen*, 2004 WI 106, ¶9, 274 Wis. 2d 568, 682 N.W.2d 433. First, we determine whether the motion alleges sufficient facts that, if true, would entitle the defendant to relief. *See id.* This is a question of law that we review *de novo*. *See State v. Bentley*, 201 Wis. 2d 303, 310, 548 N.W.2d 50 (1996). If the motion raises such facts, the postconviction court must hold an evidentiary hearing. *Id.* However, if the motion does not raise facts sufficient to entitle the defendant to relief, "or presents only conclusory allegations, or if the

---

[2] The Honorable David L. Borowski presided over Hutchins's trial. The Honorable Carolina Stark denied Hutchins's postconviction motion.

8

record conclusively demonstrates that the defendant is not entitled to relief, the [postconviction] court has the discretion to grant or deny a hearing." ***Allen***, 274 Wis. 2d 568, ¶9.   We review the court's discretionary decision under the deferential erroneous exercise of discretion standard.  *See **id.***

## I.    M.U.'s Testimony

¶10    Hutchins contends that the trial court erred in admitting other acts evidence in the form of M.U.'s testimony about her history with Hutchins.  We disagree.

¶11    WISCONSIN STAT. § 904.04(2) (2017-18)[3] bars "evidence of other crimes, wrongs, or acts ... to prove the character of a person in order to show that the person acted in conformity therewith."   The State agrees with the postconviction court that M.U.'s testimony does not constitute other acts evidence because M.U. did not testify about any specific crime, wrong, or act.  Rather, she alluded to a history of domestic violence by Hutchins against her.

¶12    We review a trial court's decision to admit evidence for the erroneous exercise of discretion.  *See **State v. Bellows***, 218 Wis. 2d 614, 627, 582 N.W.2d 53 (Ct. App. 1998).  Whether the court properly exercised its discretion "depends upon whether the trial court examined the relevant facts, applied a proper standard of law and used a demonstrated rational process in reaching its conclusion."  ***Id.***

---

[3] All references to the Wisconsin Statutes are to the 2017-18 version unless otherwise noted.

¶13   We conclude, however, that even if M.U.'s testimony was other acts evidence, it was admissible. Evidence of other crimes, wrongs, or acts is admissible "when offered for other purposes, such as proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident." WIS. STAT. § 904.04(2). This list is illustrative, not exhaustive. *State v. Shillcutt*, 116 Wis. 2d 227, 236, 341 N.W.2d 716 (Ct. App. 1983), *aff'd*, 119 Wis. 2d 788, 350 N.W.2d 686 (1984). If other acts evidence is offered for a proper purpose, the court must determine whether it is relevant and whether its probative value is substantially outweighed by its prejudicial effect. *State v. Sullivan*, 216 Wis. 2d 768, 771-73, 576 N.W.2d 30 (1998).

¶14   Here, the trial court determined that the testimony was offered for a permissible purpose: to show M.U.'s state of mind. The court found that the testimony was relevant to understanding M.U.'s conduct during and after the crimes. The court's findings suggested that M.U. acted in a manner so as not to further agitate an angry and intoxicated Hutchins and to protect her children. M.U.'s testimony offered reasons why she went to work after the assault and why she waited to report Hutchins's crimes. The court also limited the State's ability to question M.U. in detail about Hutchins's prior behavior and found that the State's limited questions would not result in unfairly prejudicial testimony. Thus, the trial court assessed the relevancy and prejudicial effect of M.U.'s testimony when it decided to admit this evidence. The court properly exercised its discretion in admitting this evidence. *See State v. Jensen*, 2011 WI App 3, ¶75, 331 Wis. 2d 440, 794 N.W.2d 482. The postconviction court did not err in denying this portion of Hutchins's motion without a hearing.

## II.     Ineffective Assistance of Counsel

¶15     Hutchins next contends that defense counsel was ineffective for failing to move for a mistrial after the trial court overruled his objection to the State's opening statements about M.U.'s history with Hutchins.   Specifically, Hutchins takes issue with the State's comment:  "Unfortunately, this isn't the first time she has experienced something like this, so she makes certain decisions," and other comments suggesting that M.U.'s reactions were based on a violent history with Hutchins.

¶16     In evaluating an ineffective assistance of counsel claim, we apply the two-part test outlined by *Strickland v. Washington*, 466 U.S. 668 (1984).  *See State v. Roberson*, 2006 WI 80, ¶28, 292 Wis. 2d 280, 717 N.W.2d 111.   To satisfy this test, Hutchins must show that:  (1) defense counsel's performance was deficient, and (2) the deficient performance prejudiced his defense.  *See Strickland*, 466 U.S. at 687.  If Hutchins fails to satisfy either prong of the two-part test, his ineffective assistance of counsel claim must also fail.  *See id.* Deficient performance requires a "showing that counsel made errors so serious that counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment."  *Id.*   With respect to the "prejudice" component, Hutchins must show that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different."  *See id.* at 694.

¶17     "[A]n ineffective assistance of counsel claim presents a mixed question of fact and law."  *State v. Champlain*, 2008 WI App 5, ¶19, 307 Wis. 2d 232, 744 N.W.2d 889.   We review a postconviction court's findings of fact for

11

clear error; whether defense counsel's performance is constitutionally infirm is a question of law, which we review *de novo. See id.*

¶18 We agree with the postconviction court that Hutchins did not receive ineffective assistance of counsel. The postconviction court noted that the State's remarks were brief, were not reiterated in its closing argument, and were "effectively nullified by the court's instruction to the jurors that 'opening statements are not evidence.'" The postconviction court stated that if defense counsel had moved for a mistrial, the trial court would have denied the motion. Consequently, defense counsel was not ineffective for failing to move for mistrial. *See **State v. Simpson**,* 185 Wis. 2d 772, 784, 519 N.W.2d 662 (Ct. App. 1994) (stating that if the motion would have been unsuccessful, there can be no prejudice and the claim of ineffective assistance of counsel fails).

¶19 For the foregoing reasons we affirm the judgment of conviction and the order denying Hutchins's postconviction motion.

*By the Court.*—Judgment and order affirmed.

Not recommended for publication in the official reports.