COURT OF APPEALS
DECISION
DATED AND FILED

October 20, 2022

Sheila T. Reiff
Clerk of Court of Appeals

**NOTICE**

This opinion is subject to further editing. If published, the official version will appear in the bound volume of the Official Reports.

A party may file with the Supreme Court a petition to review an adverse decision by the Court of Appeals. *See* WIS. STAT. § 808.10 and RULE 809.62.

Appeal No. **2021AP1384-CR**

STATE OF WISCONSIN

Cir. Ct. No. 2018CF129

IN COURT OF APPEALS
DISTRICT IV

STATE OF WISCONSIN,

  PLAINTIFF-RESPONDENT,

 V.

LEROY R. WHITTENBERGER,

  DEFENDANT-APPELLANT.

APPEAL from a judgment and an order of the circuit court for Waupaca County: TROY NIELSEN, Judge. *Affirmed*.

Before Kloppenburg, Fitzpatrick, and Nashold, JJ.

**Per curiam opinions may not be cited in any court of this state as precedent or authority, except for the limited purposes specified in WIS. STAT. RULE 809.23(3).**

¶1     PER CURIAM. Leroy Whittenberger appeals a judgment convicting him of three counts of second-degree sexual assault with use of force, as well as an order denying his motion for postconviction relief.  Whittenberger argues that the circuit court erroneously exercised its discretion when it denied his ineffective assistance of counsel claims without conducting an evidentiary hearing. Whittenberger further argues that the circuit court improperly admitted other acts evidence at trial.  We reject these arguments and affirm the judgment and order.

## BACKGROUND

¶2     The State charged Whittenberger with four counts of second-degree sexual assault of A.B., a seventeen-year-old girl with developmental disabilities.[1] For the time period relevant to this case, A.B. was living with her aunt, C.D. Whittenberger had met A.B.'s aunt, C.D., at C.D.'s workplace.  C.D. told Whittenberger that she was concerned about her niece's contacts with older men. Whittenberger offered to pretend to be someone else and to contact A.B. via text message to see if he could get information from her.  C.D. provided A.B.'s phone number to Whittenberger for this purpose.

¶3     Whittenberger began text messaging A.B. in early July 2012, using a false name, and sent her messages with sexual content and explicit photos.  On July 19, 2012, Whittenberger came to C.D.'s apartment when C.D. was not home. A.B. testified at trial that, while she was alone in the apartment with Whittenberger, he put his penis inside her vagina, forced her to perform oral sex,

---

[1] To protect the identity of the victim, we refer to her as "A.B." *See* WIS. STAT. RULES 809.19(1)(g) and 809.86 (2019-20).  For similar reasons, we refer to A.B.'s aunt as C.D.  All references to the Wisconsin Statutes are to the 2019-20 version unless otherwise noted.

and put a soda bottle inside her vagina, all without her consent. A.B. told C.D. when C.D. came home from work that Whittenberger had hurt her. C.D. took A.B. to the police station and reported that A.B. had been sexually assaulted. A.B. consented to an examination by a sexual assault nurse examiner (SANE). A DNA profile that matched Whittenberger's profile was recovered from a vaginal swab from the SANE examination of A.B.

¶4 A criminal complaint was filed and, after a jury trial, Whittenberger was convicted of three counts of second-degree sexual assault. Whittenberger filed a postconviction motion for a new trial. The circuit court denied the motion without a hearing, and this appeal follows.

## DISCUSSION

¶5 Whittenberger's postconviction motion contains allegations that his trial counsel was ineffective in multiple respects. On appeal, Whittenberger argues that the circuit court erroneously exercised its discretion when it denied his postconviction motion without conducting an evidentiary hearing. Whittenberger also argues that the circuit court improperly admitted other acts evidence, entitling him to a new trial. The State counters that not only is Whittenberger not entitled to a new trial, he also is not entitled to a *Machner* hearing on his ineffective assistance of counsel claims. *See State v. Machner*, 92 Wis. 2d 797, 804, 285 N.W.2d 905 (Ct. App. 1979). We agree, and we affirm the decision of the circuit court.

¶6 A motion claiming ineffective assistance of counsel does not automatically trigger a right to an evidentiary hearing. *State v. Phillips*, 2009 WI App 179, ¶17, 322 Wis. 2d 576, 778 N.W.2d 157. To obtain an evidentiary hearing, a defendant claiming ineffective assistance of counsel must allege in his

3

or her motion, with specificity, both that counsel provided deficient performance and that the deficiency was prejudicial to the defense. ***State v. Bentley***, 201 Wis. 2d 303, 313-18, 548 N.W.2d 50 (1996). "Whether a motion alleges facts which, if true, would entitle a defendant to relief is a question of law that we review de novo." ***Id.*** at 310.

¶7 Whittenberger alleges in his postconviction motion, and again in his appellate briefs, that his trial counsel was ineffective in multiple respects. However, his allegations are insufficient to entitle him to an evidentiary hearing. As discussed below, each of Whittenberger's ineffective assistance of counsel claims was insufficiently pled and, therefore, the circuit court did not err in rejecting those claims without conducting an evidentiary hearing.

¶8 Whittenberger argues that his defense counsel failed to communicate adequately with him, thereby rendering ineffective assistance. Whittenberger avers that defense counsel spoke with him a "handful of times on the phone," and only met with him once. Even assuming that these averments are true, they are not sufficient to show that counsel performed deficiently or that Whittenberger was prejudiced. Whittenberger fails to allege that counsel made any unreasonable error at trial that could have been avoided by additional communication. Whittenberger also fails to allege any specific information that he wanted to communicate to his attorney, but was unable to, because of the infrequency of their contacts. The circuit court properly concluded that Whittenberger failed to allege sufficient facts to warrant an evidentiary hearing on this claim.

¶9 Next, Whittenberger argues that defense counsel was deficient for failing to interview witnesses who could impeach A.B.'s credibility, and for failing to interview and impeach A.B. This argument also is insufficiently pled in

the postconviction motion. Both in the motion and in his appellant's brief, Whittenberger asserts that the discovery materials show the potential existence of impeachment evidence, but he fails to support the assertion with any citations to the record, or even a description of the potential evidence. Whittenberger complains that his defense counsel failed to interview A.B. or investigate any claims that she had been sexually abused in the past, but he does not develop this argument by explaining how this alleged failure was either deficient performance or prejudicial. We agree with the State and the circuit court that Whittenberger's claim that his defense counsel was ineffective for failing to interview impeachment witnesses or interview A.B. was insufficiently pled in the postconviction motion.

¶10 Whittenberger also argues that his defense counsel was ineffective for failing to challenge the testimony of the SANE nurse or the results of her examination. This argument fails on prejudice grounds. Whittenberger does not assert in the postconviction motion that, if the results of the SANE examination had been suppressed or the SANE expert had not testified, there is a reasonable probability that the result of the trial would have been different. *See Strickland v. Washington*, 466 U.S. 668, 694 (prejudice occurs when there is a reasonable probability that, but for counsel's errors, the result of the trial would have been different). In fact, Whittenberger does not explain at all how the admission of the SANE nurse's testimony or findings prejudiced his defense. He therefore cannot prevail on a claim of ineffective assistance of counsel related to this issue.

¶11 Next, Whittenberger argues that his defense counsel was ineffective for failing to prepare him adequately for trial. Specifically, Whittenberger asserts that his counsel did not prepare him to testify. However, Whittenberger does not explain why he believed he was unprepared, what counsel could have done to better

prepare him, or why the jury would have believed his version of the events if he had been prepared differently. The circuit court determined that it was a reasonable strategy for counsel to take a minimal approach to preparing Whittenberger to testify, in order to avoid the appearance of a scripted, inauthentic client. The circuit court concluded that counsel's approach was not "an objectively deficient decision." Where, as here, a circuit court makes a determination that trial counsel developed and executed a reasonable trial strategy, that determination is "virtually unassailable in an ineffective assistance of counsel analysis." *State v. Maloney*, 2004 WI App 141, ¶23, 275 Wis. 2d 557, 685 N.W.2d 620. Applying this highly deferential standard, we conclude that nothing in Whittenberger's briefs or the record establishes that counsel employed an unreasonable strategy in his approach to preparing Whittenberger for trial.

¶12 The postconviction motion also states that Whittenberger believed he "must testify" because he believed he was innocent and that the sex was consensual. To the extent Whittenberger argues that he did not know or understand that he had a right to remain silent, the record refutes this claim. Although a circuit court is not required to conduct an on-the-record colloquy to determine whether a defendant is knowingly, voluntarily, and intelligently waiving his or her right not to testify, such a colloquy is considered the better practice. *State v. Denson*, 2011 WI 70, ¶8, 335 Wis. 2d 681, 688-89, 799 N.W.2d 831. Here, the record reflects that the circuit court did engage in a colloquy with Whittenberger to ascertain that he was knowingly, voluntarily, and intelligently waiving his right not to testify. The circuit court properly denied Whittenberger's claim that defense counsel was ineffective for failing to inform him of his right not to testify.

¶13 Next, Whittenberger argues that his defense counsel was ineffective for failing to review the presentence investigation report (PSI) with Whittenberger.

6

Whittenberger asserts that he had to review the PSI on his own and did not have enough time to search the report for mistakes. This argument fails for lack of prejudice. Whittenberger does not allege, either in the postconviction motion or his appellate briefs, that there were errors in the PSI that affected the outcome of his sentencing hearing. The circuit court properly concluded that Whittenberger was not entitled to an evidentiary hearing on this claim.

¶14 Whittenberger also argues that defense counsel was ineffective for failing to adequately prepare him for sentencing. Whittenberger asserts that his counsel did not discuss mitigating information, allocution, the need for character witnesses, or the possibility of a long sentence. Even if we assume that defense counsel failed to discuss mitigating information with Whittenberger, any claim of ineffective assistance of counsel on those grounds fails due to lack of prejudice. The record shows that defense counsel informed the court of mitigating factors at sentencing, including Whittenberger's stable work history and upbringing and the fact that Whittenberger had bought a home and did not flee when he was out on bond. As to character witnesses and allocution, Whittenberger's postconviction motion fails to include any details regarding what information could have been presented through these means, or how that information would have made any difference at sentencing. The postconviction motion also fails to explain what counsel could have done to prepare Whittenberger for a lengthy prison sentence, or how such preparation could possibly have affected his ultimate sentence. Whittenberger's bare bones assertion in the postconviction motion that defense counsel was ineffective for failing to discuss these issues with him is insufficient to warrant a *Machner* hearing.

¶15 Whittenberger further argues that the "cumulative nature" of defense counsel's alleged deficiencies caused him prejudice. The circuit court rejected this

claim, and we also reject it. As discussed above, the circuit court properly denied each of Whittenberger's ineffective assistance of counsel claims. As to each of those claims, this court has concluded that Whittenberger's postconviction motion failed to allege, with specificity, that counsel's performance was deficient, that Whittenberger was prejudiced, or both. Considering the claims in a cumulative fashion does not cure their shortfalls. As our supreme court stated in *Mentek v. State*, 71 Wis. 2d 799, 809, 238 N.W.2d 752 (1976), "[a]dding them together adds nothing. Zero plus zero equals zero."

¶16 Finally, Whittenberger argues that the circuit court erroneously exercised its discretion when it admitted evidence of Whittenberger's prior sexual assaults. In a pre-trial motion, the State sought leave to introduce evidence of three prior sexual assaults by Whittenberger. The circuit court granted the motion. The State did not introduce evidence of all three prior sexual assaults at Whittenberger's trial, and none of the three prior victims testified. The jury heard evidence of two of the prior sexual assaults through the testimony of law enforcement officers who interviewed Whittenberger about those assaults.

¶17 Whittenberger first argues that this other acts evidence should have been excluded as inadmissible character evidence under WIS. STAT. § 904.04(1)(a), which prohibits the admission of evidence of a person's character "for the purpose of proving that the person acted in conformity therewith on a particular occasion[.]" Whittenberger's argument on this point is misplaced. The State did not seek to introduce, and the circuit court did not admit, evidence of any character trait of Whittenberger's. Rather, the record reflects that the State introduced the other acts evidence for the purpose of showing Whittenberger's motive and modis operandi for committing the crimes charged

¶18    Next, Whittenberger argues that the evidence of the prior sexual assaults did not meet any of the three prongs of the analytical framework for other acts evidence in *State v. Sullivan*, 216 Wis. 2d 768, 772-73 576 N.W.2d 30 (1998), such that he is entitled to a new trial. We reject this argument and conclude that the circuit court properly exercised its discretion in admitting evidence of Whittenberger's prior sexual assaults.

¶19    Under *Sullivan*, we first consider whether the other acts evidence is offered for an acceptable purpose under WIS. STAT. § 904.04(2)(a), such as establishing motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident. *See Sullivan*, 216 Wis. 2d at 772. Second, we consider whether the other acts evidence is relevant, considering the two facets of relevance set forth in WIS. STAT. § 904.01. *Id.* at 772. The first consideration in assessing relevance is whether the other acts evidence relates to a fact or proposition that is of consequence to the determination of the action. *Id.* The second consideration in assessing relevance is whether the other acts evidence has probative value, that is, whether the evidence has a tendency to make the consequential fact or proposition more probable or less probable than it would be without the evidence. The third step in the *Sullivan* framework is to assess whether the probative value of the other acts evidence is substantially outweighed by the danger of unfair prejudice, confusion of the issues or misleading the jury, or by considerations of undue delay, waste of time, or needless presentation of cumulative evidence. *Id.* at 772-73.

¶20    Admissibility is especially favored when the greater latitude rule applies. Greater latitude is a "longstanding principle that in sexual assault cases … courts permit a 'greater latitude of proof as to other like occurrences.'" *State v. Davidson*, 2000 WI 91, ¶36, 236 Wis. 2d 537, 613 N.W.2d 606 (citation omitted).

This evidentiary rule is codified in WIS. STAT. § 904.04(2)(b)1. and is applicable where, as in this case, the charges involve a "serious sex offense." The greater latitude rule applies to each of the three prongs of the *Sullivan* analysis. *State v. Marinez*, 2011 WI 12, ¶20, 331 Wis. 2d 568, 797 N.W.2d 399.

¶21 Turning to the first prong of the *Sullivan* analysis, we are satisfied that the State sought to admit evidence of Whittenberger's prior sexual assaults for the proper purpose of establishing motive and modus operandi. *See* WIS. STAT. § 904.04(2)(a). The circuit court determined that the State "established those two purposes by a preponderance of the evidence." We agree. The other acts evidence proffered by the State showed that Whittenberger wanted to have sexual contact with victims who were much younger than him, without their consent, and that he took actions in each of the instances to get the victims alone. The other acts evidence satisfies the first prong of the *Sullivan* framework.

¶22 The circuit court also correctly determined that the other acts evidence proffered by the State met the second prong of the *Sullivan* framework, relevance. Evidence is relevant if it: (1) "relates to a fact or proposition that is of consequence to the determination of the action,"; and (2) "has a tendency to make a consequential fact more probable or less probable than it would be without the evidence." *State v. Hurley*, 2015 WI 35, ¶77, 361 Wis. 2d 529, 861 N.W.2d 174 (quoting *Sullivan*, 216 Wis. 2d at 785–86). Here, Whittenberger's modis operandi and motive were facts of consequence because his purpose was an element of the crime of sexual assault. "There is no doubt that sexual assault, involving either sexual contact or sexual intercourse, requires an intentional or volitional act by the perpetrator." *State v. Hurley*, 2015 WI 35, ¶73, 361 Wis. 2d 529, 861 N.W.2d 174. One element of sexual assault is a defendant's intent to achieve sexual arousal or gratification; therefore, motive and intent are facts of consequence in

these cases. *Id.* at ¶¶73-74, 83. The second part of the relevancy analysis—whether the proffered evidence tends to make a consequential fact more likely—is also satisfied here. In this case, A.B.'s credibility was a central factual issue for the jury. The other acts evidence bolstered A.B.'s credibility. Especially in light of the greater latitude rule, we are satisfied that the circuit court properly determined that the second prong of the *Sullivan* framework was met.

¶23 Turning to the third and final *Sullivan* prong, we agree with the circuit court that the probative value of the other acts evidence was strong and outweighed the risk of unfair prejudice to Whittenberger. The other acts evidence in this case was highly probative of Whittenberger's motive to obtain sexual gratification. Whittenberger argues that the danger of unfair prejudice and jury confusion was high because of the number of other acts at issue. We are not persuaded. Evidence of only two of the three potential other acts was actually introduced by the State at trial, so any danger of confusion was minimal. In addition, of those two other acts the jury only heard evidence related to a conviction as to one of them, thus minimizing the prejudicial impact. The greater latitude rule provides for the liberal admission of evidence of "any similar acts by the accused ... without regard to whether the victim ... is the same" in both the criminal proceeding and the similar act. WIS. STAT. § 904.04(2)(b)1. In light of this liberal standard and the facts in evidence, we agree with the circuit court that the third *Sullivan* prong weighed in favor of admission of the other acts evidence proffered by the State. The circuit court did not erroneously exercise its discretion when it admitted evidence of Whittenberger's past sexual assaults.

¶24 In light of all of the above, we conclude that the circuit court properly denied Whittenberger's postconviction motion without holding an evidentiary hearing.

*By the Court.*—Judgment and order affirmed.

This opinion will not be published. *See* WIS. STAT. RULE 809.23(1)(b)5.